Maria L. Morgan, Respondent, *v.* Philemon H. Smith, Impleaded, etc., Appellant.

70 537
124 16
70 537
132 272

The obligation of one of two co-sureties is to pay the whole debt. If he does so, he may recover of his co-surety one-half; if he pays less than the whole debt, he can only recover from the co-surety the amount which he has paid in excess of the moiety.

When a co-surety has, by the conduct of the creditor, been released from liability, another co-surety will be held exonerated only as to so much of the original debt as the one so discharged could have been compelled to pay.

In an action against two joint co-sureties for certain lessees, judgment was ordered against both, which was reversed by the General Term as to one, and a new trial granted him on the ground of failure of consideration, as to him and was affirmed as to the other. *Held,* that it was no ground of reversal on appeal to this court by the latter that, in case his co-surety succeeded on the new trial, he would lose his right of contribution.

As to whether the right would be lost in such case, *quære.*

A release by parol of one joint debtor will not operate as a discharge to the others, and can only be pleaded by the one to whom it is given.

The distinction between the English rule and the rule in this country on that subject pointed out.

The lease was of a store, so constructed as to derive light from a floor-light, in a floor above, which was covered by the lessees of the upper floor, and the light excluded from the room below. *Held,* that this furnished no defense to the action.

*Morgan* v. *Smith* (5 Hun, 220) distinguished.

The lease contained a clause that the lessees would not assign it, or let or under-let the premises without the consent of the lessor. The latter, subsequent· to the execution of the lease and taking possession thereunder by the lessor, agreed with the lessee to rent the premises for them at their risk, crediting to them any receipts for rent, with a condition that the agreement should not impair or alter the relations of the parties, the covenants of the lease, or the security for the rent. *Held,* that the agreement did not operate to discharge the sureties, although they had no knowledge or notice of it; that the agreement, without the condition, was no more in effect than a consent that the lessees might under-let; and that, under the condition, the rights of the sureties, and consequently their liability, were in no wise affected.

A new agreement between a creditor and his principal debtor will not discharge the sureties when, by the new agreement, the remedies of the creditor against the sureties are expressly and clearly reserved.

The lessees, upon making the new agreement, delivered the key of the premises to the lessors; *held*, that such a delivery was not a surrender or a taking possession of the premises, but an intrusting of the control thereof to the lessors, for the purpose of letting on behalf of the lessees.

(Submitted June 22, 1877; decided September 25, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming as to defendant Philemon H. Smith, and reversing as to defendant Andrew H. Smith, a judgment in favor of plaintiff entered upon a verdict. The appeal was by defendant, Philemon H. Smith, from so much of the judgment as affirmed as to him the judgment below. (Reported below, 7 Hun, 244.)

This action was brought against defendants as joint sureties for the performance by the lessees of the covenants of a lease executed by plaintiff as lessor.

On the 20th day of February, 1869, the plaintiff, in writing and under seal, leased to William H. H. Smith and George H. Smith "all of the ground floor, basement and sub-cellar of the building known as seven hundred and thirty-eight (738) Broadway, in the city of New York, with the appurtenances, for the term of five (5) years from the first day of May, one thousand eight hundred and sixty-nine, at the yearly rent or sum of ninety-five hundred dollars ($9,500), to be paid in equal quarterly payments."

The said lease contained a covenant on the part of the lessees "that they will not assign this lease, nor let or under-let the whole or any part of the said premises * * * without the written consent" of the lessor.

At the time the lease and instrument of suretyship were executed, all of the building above the part demised, consisting of four lofts, was under lease to, and actually occupied by, Phelan & Collender. At the time of the lease to the Smiths there was set into the floor, immediately over the ground floor, a floor-light about fourteen feet long by seven

feet wide. When Phelan & Collender began to negotiate for a lease of the lofts, there were sky-lights to the several floors instead of floor-lights, and they required, as a condition of their taking the lofts, that these sky-lights should be changed to floor-lights. This change was made. The floor-light was, when the lease was executed, covered by Phelan & Collender with a carpet, and it remained so to the end of the occupancy by the Smiths.

One of the lessees, as a witness, swore on the trial that he called the attention of respondent's agent, before taking the lease, to the condition of the floor-light, who said: "The parties put it there because there was no tenant wanted it, but if you take the premises, you shall have the privilege of the light;" also, that they would have the right to it unobstructed.

On the 29th of March, 1873, the lessees entered into an arrangement in writing with the plaintiff, by which they agreed to pay two certain judgments which she had recovered against them for arrears of rent, and also the quarter's rent which should fall due May 1, 1873, and plaintiff agreed to rent the premises for them from May 1, 1873, for the balance of their term, the amount, if any, obtained for rent "to be credited and allowed" to them. It was expressly provided that "nothing herein contained is to be construed in any manner to impair or alter the lease in its covenants existing between the parties in relation to said premises, or to impair or alter the security thereunder, nor in anywise to affect the relation of landlord and tenant existing between the parties, and the security for the rents and covenants thereunder."

This action was brought to recover from the sureties the quarter's rent, which became due August 1, 1873.

The defendants relied on the trial, in their defense, upon the foregoing matters; and, also, so far as Andrew J. Smith was concerned, it was alleged, and he swore that he "signed the instrument of suretyship on condition the light was free over that skylight;" and that plaintiff's agent

told him that it "was there temporarily, and it should be taken off."

,"At the close of the trial the defendants' counsel moved to dismiss the complaint on the following grounds:

"First. That the agreement between the lessor and the tenants of March 29, 1873, and their acts under it, operated to discharge the defendants as sureties, they having no knowledge or notice of it.

"Second. That, in fact, the lease was surrendered, and the term put an end to by the parties to the lease, without the consent of the sureties.

"Third. The facts show that the tenants were evicted by reason of their not being able to enjoy a part of the demised premises, and the sureties were thereby discharged.

"Fourth. That it is undisputed that the instrument signed by the sureties was so signed by the defendant Andrew J. Smith, upon the express promise and undertaking on the part of the lessor that the tenants should have the enjoyment of the vertical light and other floor lights, and that at that time the lessor had, by the lease of Phelan & Collender, put it out of his power to perform such promise, and the same was never performed.

"Fifth. That on the facts the defendants are entitled to a verdict, by reason of the non-performance of the lessor's engagement in respect to the vertical light.

"Motion denied, and defendants excepted."

Defendants' counsel asked the court to submit the question to the jury whether the sureties signed the obligation sought to be enforced in this action, relying upon the representation of the lessor in respect to the light, which was untrue in fact. Refused, and defendants excepted.

The court then directed the jury to find a verdict for the plaintiff. A verdict was rendered accordingly.

*William Allen Butler*, for the appellant. The defense proved by the appellant's co-surety was not personal, but existed also as to the appellant. (*Keates* v. *Cadagan*, 2 E.

L. & Eq., 318; *Pilmore* v. *Hood*, 5 Bing. [N. C.], 97; *Saw-yer* v. *Chambers*, 43 Barb., 622; *Putnam* v. *Schuyler*, 4 Hun, 166.) The agreement between plaintiff and the lessees of March 29, 1873, operated to discharge the sureties. (*Miller* v. *Stewart*, 9 Wheat., 680, 703; *Dobbin* v. *Bradley*, 17 Wend., 422; *Grant* v. *Smith*, 46 N. Y., 93; Burge on Suretyship, 203, 206; *Brigham* v. *Wentworth*, 11 Cush., 123; 24 Wend., 443; *Benjamin* v. *Hilliard*, 23 How. [U. S.], 118, 149; *Mac Kellar* v. *Sigler*, 47 How. Pr., 20.)

*Joseph R. Flanders*, for the respondent. The lessees entered into the possession of and enjoyed everything to which, by the terms of the lease, they were entitled. (*In-gals* v. *Plawondon*, 15 Am. L. Reg. [N. S.], 220; *Jones* v. *Jenkins*, 34 Md., 6, 7, 10; *Hervey* v. *Smith*, 22 Beav., 299; *Drewell* v. *Fowler*, 3 B. & A., 735; *Lampman* v. *Milks*, 21 N. Y., 505; *Butterworth* v. *Crawford*, 46 id., 352; *Roberts* v. *Roberts*, 55 id., 276.) Although the lease was joint in form, one of the sureties could have a defense not available to the other. (*Slocum* v. *Hooker*, 13 Barb., 536; *Denny* v. *Smith*, 18 N. Y., 567; *Merritt* v. *Scott*, 3 Hun, 657; *John-son* v. *Smith*, 23 How. Pr., 444; 14 Abb. Pr., 421.)

FOLGER, J. The appellant makes in this court substantially but two points. One arises out of the fact that the contract of suretyship was joint on the part of the two defendants. It is claimed that if the plaintiff retains her judgment against the appellant, and fails to recover against the other defendant on the new trial which has been ordered, the appellant will lose his right of contribution from his co-defendant. It is not needed that we determine whether that is so. If he should retain his right to seek contribution, the most that he could recover would be any sum which he had paid more than a moiety of the whole debt. The obligation of one of two co-sureties is to pay the whole debt. His right is, if he pays the whole debt, to recover one-half from his co-surety, or the whole from the principal. If he

pays less than the whole debt, he cannot recover from his co-surety, though he may from the principal, more than the amount which he has paid in excess of the moiety which, as between him and his co-surety, it was his duty to pay. (*Lowell* v. *Edwards*, 2 Bos. & P., 268; *Browne* v. *Lee*, 6 Barnw. & Cress., 689; *Peter* v. *Rich*, 1 Ch. Rep., 34; *Deering* v. *Earl of Winchelsea*, 2 Bos. & P., 270.) It follows, then, that though the appellant should have lost his right of contribution against the co-surety, by the act or neglect of the plaintiff relieving the co-surety from his obligation, that would not itself relieve the appellant from his obligation in its full extent. The rule in equity is, that when a co-surety has, by the conduct of the creditor, been released from his liability, the remaining co-surety will be held exonerated only as to so much of the original debt as the discharged co-surety could have been compelled to pay, had his obligation continued. (*Stirling* v. *Forrester*, 2 Bligh, 575; *Ex parte Gifford*, 6 Ves., 805; *Mayhew* v. *Crickett*, 2 Swanst., 185; *Hodgson* v. *Hodgson*, 2 Keen, 704.) In this view, the appellant might have asked the learned justice at the trial court to instruct the jury, that if they found that the plaintiff had made a false and fraudulent representation to the co-surety, the plaintiff knowing it to be such, on which the co-surety relied and was thereby induced to make the contract of guaranty, then the plaintiff could recover no more of the appellant than one-half of the rent due and payable and unpaid; or what might have been equivalent to that request. We say that he might have so asked, not that we so decide at this time; but on the law of the case as it now stands, upon the adjudication of the General Term as appealed from, directing a new trial in behalf of the other defendant. The appellant made a much broader proposition. He asked the court to dismiss the complaint; which was, in effect, asking a ruling that he was liable in no sum to the plaintiff. He asked the court to leave to the jury, whether he signed the contract relying on the representation of the plaintiff which was untrue — as to which there was no testi-

mony in the case. There was no error in the trial court in refusing these requests, so far as the principle of the right to contribution is concerned.

The ground upon which the General Term ordered a new trial in behalf of the co-surety was personal to himself. It was, in substance, that there was a failure of the consideration upon which he entered into the contract. The failure alleged was the non-performance by the plaintiff of an alleged parol promise to the co-surety that the principals should have the vertical light. That promise was no part of the consideration which moved the appellant to contract, and he cannot avail himself of it; to bar a recovery against him. The joint contract was binding upon both sureties at the time of the execution of it, what has discharged the co-surety, if he is discharged, is something subsequent thereto. It is no more in effect, than any subsequent act or conduct of the plaintiff *ex pais* which would discharge the co-surety. It has been held in England, that an act of the creditor, though by parol, which discharges one of two or more joint debtors, will discharge both or all, though the contract be in writing. (*Nicholson* v. *Revill*, 4 Ad. & Ell., 675.) The rule is different in this country ; here a release by parol to one joint debtor will not operate as a discharge to other debtors jointly liable, and can only be pleaded by the debtor to whom it is given. (*Harrison* v. *Close*, 2 J. R., 448; *Rowley* v. *Stoddard*, 7 id., 209; *De Zeng* v. *Bailey*, 9 Wend., 336.) Here, to discharge both or all, the release must be under seal, in such case as this, or the discharge must arise by operation of law, which is tantamount to a release under seal. A distinction is made, too, in England between matter in discharge arising after the making of the contract, and that which shows that it was never valid. (1 Chitty, 35.) This distinction does not prevail in this State. (*Pell* v. *Pell*, 20 J. R., 126.) In this view, also, there was no error in the trial court.

It is further claimed, that the only consideration of the suretyship was the letting of the premises ; and that the

plaintiff was not able to perform her contract of letting. We do not perceive from the case, that she did not do all that she agreed to do by the lease, when she had put the lessees in possession. We see nothing in the lease to Phelan & Collender, nor in the mutual action of them and the plaintiff as to the removal of the raised sky-light, and the substitution of the floor-light, which gave to them the right to cover the latter, and exclude the light from the principals of the defendant; and the acts of Phelan & Collender might have been prevented by the principals, or damages recovered therefor.

The case of *Morgan* v. *Smith* (5 Hun., 220), is not an adjudication controlling in this case. The judgment of the court there was passed solely upon an offer of testimony, which was refused by the trial court in that case. That offer included that the plaintiff had given to Phelan & Collender the right to cover the floor-light. That proven would have made a different state of facts there. But it was not proven there, nor do we perceive the evidence in this case by which the principals of the defendant will prove it on a new trial.

At the trial the defendants asked for a dismissal of the complaint, on the ground that the agreement of 29th March, 1873, and the acts of the plaintiff as landlord, and the principals of the defendants as tenants, operated to discharge the defendants as sureties, they having no knowledge or notice of the agreement.

It was a provision of the lease that the lessees should not assign it, nor let or underlet the whole or any part of the premises without the written consent of the plaintiff. There was implied thereby that with that written consent there might be an assignment, or letting or underletting by the lessees. The sureties knew, or were bound to know this, when they executed their guaranty. Hence it would not operate to discharge them from their liability, that the plaintiff should give such a written consent. That consent having been obtained at any time, it did not matter whether the

lessees let or underlet themselves or by agent, nor did it matter whether the agent was the plaintiff or other person. Hence, without the clause in the plaintiff's agreement of twenty-ninth March, which we will presently notice, that agreement was no more in effect than a writtten consent by the plaintiff that the lessees might underlet the premises.

But the plaintiff was more wary than that. To her consent she added a condition that her action should not impair the lease, nor the security thereunder, nor the relation of landlord and tenant, nor the security for the rent, nor the covenants thereunder. This was tantamount to a condition that the agreement between the plaintiff and her lessees should not operate to discharge the sureties. It will be observed that the lessees were not, by the terms of the agreement, discharged from the payment of the rent; nor was there an extension of time of payment. The sureties had left to them all the rights they ever had to pay up the rent as it fell due, and to go against their principals for repayment, which right was also preserved to the sureties by the condition put into the agreement. Under such a stipulation, the surety's liability will remain, notwithstanding the arrangement between the creditor and the principal, even though it be more lax and favorable to the principal than the agreement in this case. The ground upon which a surety is held discharged when further time for payment is given to the principal debtor, is that the rights of the surety are varied, as he cannot then, when the debt is due and payable, make payment, and thus put himself in the place of the creditor, according to the original implied contract, and enforce repayment from the principal. Where the remedies of the creditor are reserved against the sureties, notwithstanding the new agreement with the principal, the situation of the sureties is not varied, and the rule does not apply. (*Boultbee* v. *Stubbs*, 18 Ves., 20, 22.) When the creditor proceeds against the surety in such case, and the surety pays, he is then entitled to the place of the creditor as it was originally, and may in turn enforce the principal,

SICKELS.—VOL. XXV.    69

who may not set up against the surety the new arrangement with the creditor, in which the remedies against the surety were expressly reserved, and in consequence his resulting rights also reserved. (*Burke's Case*, cited *Ex parte Gifford*, 6 Vesey, 805–809; *Webb* v. *Hewitt*, 3 Kay. & J., 338; *Kearsley* v. *Cole*, 16 M. & W., 126.) Though the stipulation to reserve the rights of the creditor against the surety must be seen plainly (*Boultbee* v. *Stubbs, supra*), there can be no doubt in this case; for the language of the agreement is labored, to prevent an alteration in this respect of the rights, obligations, and relations of all the parties interested.

Stress is put by the appellant upon the delivery of the key to the plaintiff by the lessees. It is styled a surrender by the lessees, and a taking of possession by the plaintiff. It was an act done under the agreement of the 29th of March, and must be characterized by that. The delivery and reception of the key was not a surrender or taking possession of the premises, but an intrusting to the plaintiff of the control of them for the purpose of letting them in behalf of the lessees, they all the while remaining tenants and liable for the rent, according to the terms of the lease. We do not think that this point can be sustained.

We are of the opinion that the judgment, so much of it as is appealed, should be affirmed; and so much of it as is not appealed, remains of course.

All concur, except RAPALLO, J., dissenting; CHURCH, Ch. J., and ANDREWS, J., not voting.

Judgment affirmed.