(29 Misc. Rep. 642.)

### GAFFNEY v. PAUL et al.

(Supreme Court, Appellate Term. November 29, 1899.)

1. LANDLORD AND TENANT—RELETTING ON TENANT'S ACCOUNT.
   Without an agreement, a landlord cannot relet demised premises on surrender by the tenant during the term, and if he does so the tenant is not responsible for any loss of rent.
2. SAME—AGREEMENT TO RELET.
   An implied agreement to relet demised premises surrendered by the tenant during the term for the latter's account is not sustained by the fact that on receipt of the keys the landlord indicated his intention to sue, where no further communication was had with the tenant, no notice was given him, and he was in no wise advised of the proceeding.

Appeal from municipal court, borough of Manhattan, Ninth district.

Action by Annie M. Gaffney against Gregory Paul and another to recover for breach of a lease contract. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Edward Hymes, for appellants.
Frank T. Griffin, for respondent.

LEVENTRITT, J. The determination of this appeal turns upon the question whether the facts disclose an acceptance of the surrender of demised premises or a reletting for the account of the tenant, with attendant liability for a resulting deficiency. On the 4th day of February, 1898, the plaintiff, by written indenture, leased to the defendant certain premises for the term of one year commencing on the 1st day of May, 1898, at an annual rental of $900, payable monthly in advance. The rent for the month of May, 1898, was paid, but the defendants, prior to that date, and on the 30th day of April, 1898, vacated the premises. On the trial no evidence was offered by the defendants. The plaintiff testified that her husband acted as her agent for the house, and that the first intimation she received of the proposed abandonment of the premises was on the 30th day of April, through a postal card from the defendants, notifying her of their intention to move. The husband testified that on that morning he called on the defendant Gregory Paul, and told him "he didn't treat us right in vacating the house after signing the lease; * * * and I told him that I would have to sue him, and he said, 'You can go ahead, and see what you can get.' I told him to leave the keys in the tailor store, and I went after them some time in the afternoon, and I guess one key was short." On the afternoon of the same day the husband went to

the designated tailor shop, obtained one key, and then went to the house, where he found the other. At the interview—which was the only one had—nothing was said about reletting or surrendering the premises. One month later, without any notice to the defendants, the plaintiff placed a new tenant in possession for the remainder of the year at a monthly rental of $65. The stipulated monthly rental under the lease being $75, this action was brought to recover the difference of $10 per month for a period of 11 months. The lease is silent on the subject of re-entry, after abandonment, for the purpose of reletting for the account of the tenant. There is no provision that the latter should be liable for any deficiency arising from a demise to a new tenant for the balance of the term at a lower rental. It is a well-established principle that the right to relet after abandonment by the tenant rests in contract, and does not flow from the mere relation of landlord and tenant. Morgan v. Smith, 70 N. Y. 537. The rule, applicable to certain classes of contracts, requiring a party complaining of a breach to minimize the resultant damage, has no applicability to contracts of lease. Gray v. Ice-Cream Co., 9 App. Div. 115, 119, 41 N. Y. Supp. 73. Without an agreement, either express or implied, a landlord has no right to relet demised premises, and, if he does so, he cannot hold the lessee responsible for any loss of rent. McAdam, Landl. & Ten. (2d Ed., Supp.) p. 142. He may accept or refuse to accept the surrender, but, if he relets without the sanction of an agreement, the tenant cannot be held liable for future rent. Chaplin, Landl. & Ten. § 208; MacKellar v. Sigler, 47 How. Prac. 20; Gray v. Ice-Cream Co., supra. This agreement may be written or oral, or inferred from circumstances (Underhill v. Collins, 132 N. Y. 269, 30 N. E. 576); but agreement there must be. In the case just cited, which has been invoked by both parties as authority for their respective contentions, the court, conceding that "reletting would operate as an acceptance of a surrender of the premises unless there is an agreement, express or implied, that such reletting may be made," say:

"The acceptance by the landlord of the surrender of leased premises would prevent the recovery of rent not already due; and if the landlord takes possession of such premises so surrendered, and relets them to other parties, he will be deemed to have accepted a surrender, unless there are facts rebutting this inference." Page 271, 132 N. Y., and page 577, 30 N. E.

In that case sufficient facts were disclosed to support an implied agreement or authority to relet. Acceptance of the keys was refused by the landlord, who notified the tenant at the time that he should hold him for the rent, and lease the premises for his benefit. In the case at bar we find no fact on which the essential contractual element of implied assent on the part of the tenant can be predicated. It is quite true that the circumstances under which the keys were received, especially the statement of the landlord that he would be compelled to sue the tenant, negative any idea of acceptance of the surrender at that time. Chaplin, Landl. & Ten. § 565, and cases cited. The landlord, leaving the premises vacant, could have held the tenant liable for the rent as it matured dur-

ing the unexpired term of the lease. But the solitary fact that on receipt of the keys he indicated his intention to sue will not sustain an implied agreement to relet for the tenant's account. The reletting did not take place until one month after the abandonment. It may well be that during that time the landlord changed his mind, and conceived the idea of reletting. No further communication was had with the tenant. No notice was given him. It does not appear that he was in any wise advised of the proceeding. How, then, could his assent have been expressed, or his acquiescence be implied? In Gray v. Ice-Cream Co., supra, the court held that, even upon service of a written notice, it did not conclusively follow that the landlord's right to relet existed, but that whether the tenant assented to the reletting, or whether the landlord relet for his own or for the tenant's benefit, became questions of fact for the jury. We appreciate that it is the tendency of the courts to go far in spelling out of slight circumstances the necessary assent to the reletting where no permissive provision is inserted in the lease. In this case, however, we fail to find any supporting facts, and cannot, therefore, depart from what is well-established law. It follows that the judgment should be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.