SMITH et al. v. OTTMANN.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

GUARANTY—PERFORMANCE OF LEASE—ASSIGNMENT—DISCHARGE OF GUARANTOR.
    A hotel lease authorized the lessee to sublet the premises to such person or persons as might be partners or associates in business with him, or to a corporation consisting mainly of himself and his associates. In the same cover, but by a separate instrument, defendant's testator covenanted with plaintiffs that, on default by the lessee in the payment of rent, or the performance of any of the covenants of the lease, testator would pay the rent and taxes or any arrears thereof, etc., required to be paid under the lease. *Held* that, the guarantor having limited his

liability to the default of the lessee alone, the provision of the lease au-
thorizing the assignment could not be read into the guaranty, so that,
the lessee having assigned the entire term and all his rights thereunder
to a corporation organized to carry on the hotel consisting of the lessee
and his associates in business prior to the time the lease took effect, the
guarantor was discharged.

Scott and Clarke, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Catharine T. Smith and others, as executors of Hugh
Smith, deceased, against Louis Ottmann, as executor of William Ott-
mann, deceased. From a judgment dismissing the complaint on the
merits on referee's decision, plaintiffs appeal. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE,
HOUGHTON, and SCOTT, JJ.

Lucius H. Beers, for appellants.
Charles E. Rushmore, for respondent.

HOUGHTON, J. On the 6th day of June, 1895, the plaintiffs leased
to one David S. Hammond the premises known as the Murray Hill
Hotel, in the city of New York, for the period of 10 years, beginning
the 1st day of July, 1896, at a stipulated rental, payable monthly, in ad-
dition to the payment of taxes and water rents. The lease contained a
provision that Hammond should not sublet the premises for any pur-
pose other than the ordinary hotel business, and that he should not as-
sign the lease, "except to such person or persons as may be partners or
associates in business with him in the management or profits of said
hotel, or to a corporation consisting mainly of himself and his associates
in business." In consideration of such letting defendant's testator,
William Ottmann, by an instrument in writing contained in the same
cover with the executed lease, covenanted and agreed with the plaintiffs,
"their successors and assigns, that if default should at any time be made
by the said David S. Hammond on the payment of the rent (including
taxes), or the performance of any of the covenants within contained on
his part to be paid and performed, that I will well and truly pay the
rent and taxes or any arrears thereof, and any and all other sums of
money required to be paid by the said David S. Hammond under the
terms of the within lease" on a diminishing scale, which limited his lia-
bility as surety to the sum of $100,000 during the last five years of the
term. Ottmann died in September, 1895, and in June, 1896, before
the lease went into effect, Hammond assigned it and all his rights un-
der it, without reservation, to the Murray Hill Hotel Corporation, or-
ganized for the purpose of carrying on the hotel, and consisting mainly
of Hammond and his associates in business. The corporation entered
into possession of the premises, and the lessors accepted rent from it,
and looked to it for payment of the rent and recognized it as the tenant
in possession. During the last five years of the term the corporation
was in default in a sum greater than $100,000 of the stipulated rent,
and this action is brought to recover that amount from the defendant
because of the guaranty signed by his testator. The issues were refer-
red to a referee to hear and determine, and resulted in a judgment dis-

111 N.Y.S.—58

missing the complaint upon the merits, from which the plaintiffs appeal.

We are of the opinion that the absolute assignment of the lease by Hammond before it went into effect, without any reservation as to him or to the lessors, and the recognition of the hotel company as the tenant in possession under the lease, discharged the surety of Hammond from liability. It is true the lease provided that Hammond might assign it to the kind of corporation to which the assignment was made, but that was an agreement between the lessors and the lessee. The surety was careful in the paper which he signed to guarantee only against the default of Hammond himself. Throughout the agreement of guaranty Hammond alone is mentioned. If plaintiffs should convey the property and transfer the lease, the surety stipulated that he would be bound to their "assigns," but he makes no such stipulation as to the assignee of Hammond. The surety graduated his liability, and made it less as the term of the lease progressed. While this shows intent on the part of the surety to remain liable until the end of the term, it throws no light on his intention to become liable for the default of an assignee. In our opinion, in view of the express language of the contract of guaranty to become and remain liable for the default of Hammond alone, the provision in the lease permitting its assignment cannot be read into the guaranty. To do this and thus interpret the contract of guaranty as applying to an assignee of the lease would do violence to the plain terms of the agreement which defendant's testator entered into.

While there are some expressions in the opinion in Morgan v. Smith, 70 N. Y. 537, to the effect that a surety is presumed to know the terms of the lease, and that a provision for its assignment may, under some circumstances, be read into a contract of guaranty, and thus make the surety liable for the default of the assignee, the precise holding of that case is far from being an authority compelling that to be done and continuing the liability of a surety after assignment is made. The so-called assignment in that case was construed to be a mere permission to underlet with a proviso that in no case should the lessee be discharged or the relation of landlord and tenant affected. This limited holding of the case is especially pointed out in Spies v. National City Bank, 174 N. Y. 222–228, 66 N. E. 736, 61 L. R. A. 193, and in the opinion of Mr. Justice Ingraham in the same case in 68 App. Div. 70–74, 74 N. Y. Supp. 64.

There are other grounds urged by the respondent to sustain the judgment, but it is unnecessary to discuss them, in view of our conclusion that the one adverted to is sufficient.

The judgment should be affirmed with costs.

INGRAHAM and McLAUGHLIN, JJ., concur.

SCOTT, J. I dissent. There is no doubt that, if there had been no provision in the lease permitting it, the assignment of the lease by Hammond, and the acceptance by plaintiffs of the assignee as tenant, would have operated to release the surety for Hammond. That, how-

ever, is not the case presented by the proofs. The lease and the contract of suretyship were coincident in time, and the latter was expressly conditioned upon and made in consideration of the execution of the lease. To ascertain the respective rights and obligations of the landlord and the surety, the lease and the contract of suretyship must be read together. It is true that the surety's agreement was that Hammond would perform the covenants of the lease, and, if it stood alone, it could not be extended to cover a default by an assignee of the lease. The latter paper, however, contains a condition that Hammond may not assign the lease, "except to such person or persons as may become partners or associates in business with him in the management or profits of said hotel or to a corporation consisting mainly of himself and his associates in business." This was equivalent to an agreement on the part of the landlord, as well as of the surety, that Hammond might assign the lease to "a corporation consisting mainly of himself and his associates in business," and the proof shows, as the referee has found, that the Murray Hill Hotel Company was such a corporation. The assignment, being, therefore, within the terms and contemplation of the contract of suretyship, did not operate to discharge the surety. Morgan v. Smith, 70 N. Y. 537.

Nor do I consider that the agreement of June 19, 1902, can be construed as an abrogation of the lease, and the making of a new agreement in place thereof. Its every line and word indicates that the parties to it had no such intention. At the very most, it amounted only to an agreement by the landlord to forbear the payment of rent until September 1, 1902, while not releasing the tenant from any of the obligations of the lease, including the ultimate payment of the rent which might accrue during the period of forbearance. Nor do I consider the correspondence which passed between the parties subsequent to October 1, 1902, constituted such a presentation and rejection of a claim as set the short statute of limitation running. But, if it should be held that the contract of June 19, 1902, amounted to an agreement by the landlord not to enforce the payment of any rent until September 1, 1902, and that the subsequent correspondence constituted a sufficient presentation and rejection of a claim for the amount of rent then unpaid, still the surety was not wholly discharged thereby. Each installment of rent reserved by the lease was a separate and independent demand, and an extension of the time of payment of one or more installments, or the starting of the short statute of limitation as to one or more installments, would not impair the obligation of the surety as to these installments which fell due subsequently. Ducker v. Rapp, 67 N. Y. 464; Coe v. Cassidy, 72 N. Y. 133. I find nothing in the case, therefore, which under the most favorable construction of the evidence operated to release the surety or his estate from an obligation to make good the unpaid rent which accrued subsequent to September 1, 1902, and to that extent at least the plaintiffs should have recovered judgment.

I am therefore for reversal and a new trial.

CLARKE, J., concurs.