200 EAST END AVENUE CORPORATION, Respondent, *v.* GENERAL ELECTRIC COMPANY, Appellant.

First Department, April 10, 1958.

416

*Phil E. Gilbert, Jr.*, of counsel (*Harold R. Tyler, Jr.*, and *Mason Harter* with him on the brief; *Gilbert & Segall*, attorneys), for appellant.

*John P. McGrath* of counsel (*Martin D. Jacobs* with him on the brief; *Hodges, Reavis, McGrath & Downey*, attorneys), for respondent.

RABIN, J.  This is an action for alleged breaches of warranty and for fraud arising out of the purchase and installation in the plaintiff's apartment building of integrated heating and air-conditioning units manufactured and sold by defendant.  The jury awarded plaintiff $100,000 on the fraud count and $5,000 on the consolidated warranty counts.  For the reasons to be indicated, the judgment must be reversed and the complaint dismissed as a matter of law.

The plaintiff is the owner of, and the plaintiff's president, one Atlas, was the general contractor for a luxury apartment house in New York City.  The defendant sold 560 AD "Personal Weather Control System with Air Conditioning Units" to Triangle Sheet Metal Works, Inc., the heating and air-conditioning subcontractor for the building, at a price of $65,601.  Prior thereto, the defendant had issued circulars describing such units to the building trade.  The plaintiff's president read the circular and the plaintiff required its subcontractor to use the G. E. units.  The circulars represented that by using defendant's units tenants could have individual temperature control, year-round air conditioning, fresh air in the apartments without opening the windows.  The alleged failure of the units to produce the described results is the basis for the charged fraud and breach of warranty.

Arguably, the evidence adduced does not sustain a finding that the circular misrepresented the capacities of defendant's units, but as will be seen later, it is not necessary to reach the question.  In most respects the defects complained of by plaintiff result from the failure of plaintiff to utilize additional equipment or controls expressly specified by the circular.  In any event, the evidence shows and we conclude that the plaintiff knew when its plans were made and before defendant's units were installed in plaintiff's building exactly how they would operate and knew each of the respects in which those units allegedly failed to comport with the representations made by defendant.  In such circumstances there can be no recovery in fraud.  (*Schumaker* v. *Mather,* 133 N. Y. 590; *Villard* v. *Villard,* 219 N. Y. 482; *Long* v. *Warren,* 68 N. Y. 426; *Sylvester* v. *Bernstein,* 283 App. Div. 333, affd. 307 N. Y. 778.)

Plaintiff retained an architect to plan and design the building, and an engineering firm specializing in such matters was retained by it to design and supervise the installation of the structure's heating and air-conditioning system.  The system, using defendant's units, ultimately designed and installed was

that formulated by the foregoing architects and engineers after full discussion and consultation with Atlas. The engineer actually engaged in the design of the system installed, testified without contradiction, that he was fully aware of the precise manner in which defendant's units would and did perform in that system.

This knowledge of plaintiff's agent acquired while acting in the course of his employment and within the scope of his authority was directly attributable to the plaintiff. (*Beinert* v. *Tivoli & Co.*, 62 Misc. 616 [Appellate Term, LEHMAN, J.] ; *Brown & Bro. Co.* v. *Chase Brass & Copper Co.*, 10 Misc 2d 33 [Appellate Term, 1st Dept.] ; *New York Mtge. Co.* v. *Garfinkle*, 231 App. Div. 327, affd. 258 N. Y. 5 ; 19 C. J. S., Corporations, § 1078, pp. 613–614.) Moreover, it was Atlas' testimony that he was experienced in the construction and operation of air-conditioned structures, and had been an officer of an air-conditioning concern. The expertise of Atlas in matters of air conditioning plus his close participation in the design and installation of the system used by plaintiff gives rise to the irresistible inference that Atlas too was fully cognizant of how defendant's units would and did function.

The proof leaves room only for the conclusion that plaintiff knew or should have known in advance of installation the performance to be expected of defendant's units as installed; indeed, the system designed by plaintiff's architects and engineers was in contemplation of the air-conditioning characteristics of defendant's units, including those characteristics plaintiff now charges to be at variance with the defendant's circulars. However limited may be the duty to probe the truthfulness of a representation (see Prosser on Torts [2d ed.], pp. 552–553; Restatement, Torts, § 540), there can be no liability in fraud where the complaining party is, in advance, fully knowledgable and apprised of those matters as to which the representations are alleged to have deceived. In any event the plaintiff is chargeable with the knowledge of its agent as a matter of law. For identical considerations there can be no liability for breach of implied warranty under the described conditions. The judgment below was, therefore, against the evidence and contrary to the weight of the evidence and accordingly must be reversed. But beyond that the uncontradicted evidence clearly shows knowledge by the plaintiff corporation and the complaint therefore must be dismissed.

While we reverse and dismiss the complaint on the proof, we think it also appropriate to point out that the trial court

committed error on the issue of damages. At the trial the plaintiff was erroneously permitted, over objection, to introduce vague and speculative expert testimony of a total " loss of value " in a sum " in excess of $350,000 " allegedly occasioned to plaintiff's property by defendant's units; and upon the conclusion of the trial the court charged the jury that it could consider as an item of special damages the plaintiff's cost of construction to the extent it exceeded the cost of construction necessary to accommodate a conventional cooling and heating system. It also permitted the jury to consider the difference between the annual cost of maintaining the system installed and maintaining such a conventional system multiplied by " the number of years, two, five, eight, or more or less, as you determine, that it [plaintiff] will continue to incur such excess costs ". Both these items were too remote to be permitted as a measure of damages for breach of warranty (Personal Property Law, § 150, subd. 7) or fraud (see *Reno* v. *Bull*, 226 N. Y. 546), particularly since neither was prefaced by the condition of a finding that the system installed was no better or valuable than a conventional system. In addition, the charge apparently identified and certainly failed to distinguish between the measure of damages for breach of warranty and for fraud thereby disregarding the unique standard of general damages obtaining in fraud cases, i.e., the difference between the price paid and the value received.

The judgment of the court below should be reversed on the law, the complaint dismissed and judgment ordered in favor of the defendant, with costs to appellant.

BREITEL, J. P., FRANK, VALENTE and STEVENS, JJ., concur.

Judgment unanimously reversed upon the law, the complaint dismissed and judgment ordered in favor of the defendant, with costs to the appellant.