**HOTEL CONSTRUCTORS, INC., and WTC Hotel Corporation, Plaintiffs,**

v.

**The SEAGRAVE CORPORATION, Vista Resources, Inc., Western Vista Corp., and Herbert J. Kirshner, Defendants.**

No. 82 Civ. 5644 (RLC).

United States District Court,
S.D. New York.

Oct. 13, 1983.

Kelley, Drye & Warren, New York City, for plaintiffs; John M. Callagy, New York City, of counsel.

Golenbock & Barell, New York City, for defendant Seagrave; Michael C. Silberberg, Geri S. Krauss, Jacob H. Zamansky, New York City, of counsel.

Shea & Gould, New York City, for defendant Kirshner; Sheldon D. Camhy, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant Seagrave Corp. has moved under F.R.Civ.P. 12(b)(6) for an order dismissing plaintiffs' second through eighth claims for relief for failure to state claims upon which relief may be granted. Defendants

Vista Resources, Inc., Western Vista Corp. (the "Vista" defendants) and Herbert J. Kirshner have joined in Seagrave's motion and the Vista defendants have also asserted independent grounds for dismissing the fifth, sixth and eighth claims with respect to them. For the reasons that follow, defendants' motions are denied in their entirety. Plaintiffs are ordered to submit a supplemental pleading clarifying their fourth and sixth claims within ten days of the filing of this opinion.

## PRELIMINARY STATEMENT

Plaintiff WTC Hotel Corp. leased space at the World Trade Center in New York City in order to build what is now the Vista International Hotel. Plaintiff Hotel Constructors, Inc. ("HCI") served as the contractor on the construction project. Acting as an agent for HCI, Morse/Diesel, the project construction manager, entered into a subcontract with the Flour City Architectural Metals Corp. Flour City was to erect the exterior or "curtain wall" of the hotel. Plaintiffs' first claim for relief, the sufficiency of which defendants do not challenge here, alleges that Flour City caused extensive delays in construction, thereby breaching the subcontract and damaging plaintiffs. Seagrave and the Vista defendants are, respectively, the present and former owners of Flour City. Defendant Kirshner was the chief executive officer of Flour City and Western Vista and president of Vista Resources.

Plaintiffs' second claim charges fraud in the inducement of the subcontract, alleging that defendants did not intend to adhere to the terms of the subcontract at the time they entered into it. The third and fifth claims allege fraud in the inducement of two modifications of the same subcontract, the first calling for payment of an additional $750,000 and the second for an additional $100,000 payment to defendants. Plaintiffs contend that defendants never intended to meet the performance schedules to which they promised to adhere in exchange for the two additional payments. Plaintiffs' fourth and sixth claims allege that the $750,000 and $100,000 payments were induced not by fraud, but by negligent misrepresentations. The seventh and eighth claims assert that these same payments were made under duress, defendants having threatened to cease their work on the hotel if plaintiffs refused to pay. Defendants move to dismiss each of these claims.

## THE FRAUD CLAIMS

Defendants first challenge the sufficiency of the three fraud claims by arguing that plaintiffs have merely alleged that defendants failed to perform the promises contained in the subcontract and subsequent modifications. A cause of action for fraud can only be based upon the misrepresentation of a present or past fact. The mere failure to keep contractual promises of future acts will not sustain an action for fraud. *Cranston Print Works Co. v. Brockmann International A.G.*, 521 F.Supp. 609, 614 (S.D.N.Y.1981) (Conner, J.); *Wegman v. Dairylea Co-op., Inc.*, 50 A.D.2d 108, 376 N.Y.S.2d 728, 734 (4th Dep't. 1975), *appeal dismissed*, 38 N.Y.2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976). The New York courts have long recognized, however, that an action for fraud will lie if the promisor did not intend to keep his promise at the time he made it. His present intent is the fact misrepresented. *Plum Tree, Inc. v. N.K. Winston Corp.*, 351 F.Supp. 80, 85 (S.D.N.Y.1972) (Gurfein, J.); *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957). Plaintiffs here have alleged not only that defendants failed to keep their contractual promises, but that they made those promises "with the undisclosed intention not to perform...." *Sabo v. Delman*, 164 N.Y.S.2d at 717, 143 N.E.2d at 908; Complaint ¶¶ 27, 37, 51.[1]

---

**1.** Complaint ¶ 27: Upon information and belief, defendants Old Seagrave, Flour City and Kirshner knew that when the Subcontract was entered into, defendant Flour City had no intention of performing the Subcontract according to its terms, but said defendants nevertheless intentionally induced Morse/Diesel and plaintiffs to enter into the Subcontract by falsely representing to Morse/Diesel and plaintiffs that de-

■ A purely conclusory allegation that defendants never intended to perform, standing alone, could not convert a claim for breach of contract into one for fraudulent inducement to contract, *Cranston Print Works Co. v. Brockmann International A.G.*, *supra; Stanat Manufacturing Co. v. Imperial Metal Finishing Co.*, 325 F.Supp. 794, 796 (E.D.N.Y.1971); *Hertz Commercial Leasing Corp. v. LMC Data, Inc.*, 73 Misc.2d 1009, 343 N.Y.S.2d 689, 693 (N.Y.Civ.Ct.1973), but plaintiffs have also alleged facts which, if proven, may substantiate the claims of fraud. Plaintiffs maintain that on each occasion that defendants made promises with respect to their work on the hotel, they already had so many previous contractual commitments requiring them to do similar work on other projects that they could not possibly have intended to perform as promised. This latter contention is itself not merely conclusory, but supported by more detailed allegations. Complaint ¶¶ 23, 24, 25, 32, 33.[2] In short, plaintiffs allege facts indicating that defendants made contractual promises despite their awareness of their inability to perform, and thus, that defendants could not have intended to live up to their commitments at the time they made them. Such allegations state a cause of action for fraud. *E.g., Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); *see* Restatement (Second) of Torts § 530, Comment d (1977); *see also, Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir.1979); *Coolite Corp. v. American Cyanamid Co.*, 52 A.D.2d 486, 384 N.Y.S.2d 808 (1st Dep't. 1976); *Terris v. Cummiskey*, 11 A.D.2d 259, 203 N.Y.S.2d 445 (3rd Dep't. 1960).

■ Defendants' second contention is that plaintiffs have not pleaded fraud with the particularity required by F.R.Civ.P. 9(b). Rule 9(b) requires the pleader to specify precisely what statements were made, when, where and by whom they were made, in what manner the plaintiff was misled, and what the defendant obtained as a consequence. *Barclays Bank of*

---

fendant Flour City would perform the Subcontract.

¶¶ 37, 51: At the time Kirshner made the foregoing representations, he knew that plaintiffs had no other means to complete the work and that defendants had no intention of performing the curtain wall work as promised.

2. Complaint ¶ 23: Upon information and belief, defendant Kirshner, on behalf of Old Seagrave and/or Flour City, had contracted for at least the following projects involving curtain wall work at or prior to the time the Subcontract was entered into, all of which required enormous commitments of manpower and other resources on the part of defendants: the computer center for the Social Security Administration in Woodlawn, Maryland; the Commodore/Grand Hyatt and Helmsley Palace Hotels in New York, New York; the Richard J. Hughes Justice Complex in Trenton, New Jersey; and projects in Kansas City, Missouri and Denver, Colorado.

¶ 24: Upon information and belief, many other projects were contracted for on behalf of Old Seagrave and/or Flour City prior to or during the construction of the Hotel which defendants Kirshner, Old Seagrave and Flour City knew would make it impossible to perform the Subcontract in accordance with its terms. Such other projects included, but were not limited to: The Wayne State Out-Patient Clinic, the Detroit General Hospital, the Hyatt Regency Hotel in Kansas City, the Port Authority Bus Terminal, New York City, 444 Market Street, San Francisco, California, and the National Institute of Health, Bethesda, Maryland.

¶ 25: In the Proxy Statement distributed to the shareholders of defendant Old Seagrave in connection with the sale to New Seagrave of, *inter alia*, all or substantially all of the assets of defendant Flour City, it was conceded that Old Seagrave's architectural metals and glass products division had a "backlog of unfilled orders at December 31, 1979 amount[ing] to approximately $60,000,000." It was further conceded in the Proxy Statement that it would be unreasonable to expect Old Seagrave to meet more than 70% of its back order commitments by the end of 1980.

¶ 32: In or about March, 1980, a Flour City employee, Mr. Mark Cohn, stated to a representative of Morse/Diesel that Flour City was oversold, with 18 jobs on the East Coast (12 active, six in design) alone supposed to be produced in Flour City's Minneapolis plant. This was the same plant where the necessary parts and materials for the Hotel were to be fabricated.

¶ 33: In or about March, 1980, an employee of defendants also stated to a representative of Morse/Diesel that Flour City had contracted for more jobs than it could handle at its plant in Minneapolis and that it would take several months before Flour City could fabricate the necessary parts and materials for the Hotel.

*New York v. Goldman,* 517 F.Supp. 403, 415 (S.D.N.Y.1981) (Cannella, J.); *Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415, 420–21 (S.D.N.Y.1978) (Haight, J.). The pleading must apprise the defendant of the claim against him and of the acts which allegedly constitute the fraud. *Felton v. Walston & Co., Inc.,* 508 F.2d 577 (2d Cir.1974).

■ Plaintiffs' allegations of fraud meet this standard. The third and fifth claims detail the allegedly fraudulent misrepresentations, assert that defendant Kirshner made them and specify when and where he did so. Complaint ¶¶ 34, 35, 49, 50.[3] Plaintiffs allege that they were misled as to defendants' intention to perform their promises and that the fraud was designed to induce plaintiffs to make the $750,000 and $100,000 payments. Plaintiffs' second claim specifies no representations other than those made in the subcontract itself, but contractual representations can themselves be fraudulent. *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572 (2d Cir.1969); *Government of India v. Cargill, Inc.,* 445 F.Supp. 714, 719 (S.D.N.Y.1978) (Tenney, J.). As in the third and fifth claims, plaintiffs allege that they were misled as to defendants' intent. The purpose of the alleged fraud was to induce plaintiffs to sign the subcontract, which

was worth $3,600,000 to defendants. Plaintiffs' assertion that the challenged representations were fraudulent is not, as defendants argue, merely conclusory, but is, as noted above, supported by allegations of facts which, if true, may lead to the conclusion that fraud has been committed. Complaint ¶¶ 23, 24, 25, 32, 33.[4] *Robertson v. National Basketball Association,* 67 F.R.D. 691, 695 (S.D.N.Y.1975) (Carter, J.). Thus, plaintiffs have been fully informed of the exact nature of the fraud claimed and the demands of Rule 9(b) have been satisfied. *Todd v. Oppenheimer, supra.*

■ Finally, defendants argue that plaintiffs' fraud claims must be dismissed because, as a matter of law, plaintiffs cannot demonstrate the requisite reliance on the alleged misrepresentations. Prior to the representations alleged in the third and fifth claims to have misled plaintiffs, two employees of defendants notified a representative of HCI's agent, Morse/Diesel, that defendants had many contractual commitments that would interfere with the work at the hotel. Complaint ¶¶ 32, 33.[5] Since the theory underlying plaintiffs' fraud claims is that defendants had so many other contractual commitments to do work similar to that required at the hotel that they could not have intended to keep their promises to plaintiffs, if plaintiffs al-

---

**3.** Complaint ¶ 34: At or about the same time that defendants' employees disclosed that Flour City was overbooked and could not perform the Subcontract, Kirshner represented to plaintiffs that the necessary parts and materials for the Hotel's curtain wall had been designed and would be fabricated promptly.

¶ 35: In or about March, 1980, at a meeting in Chicago, Illinois, at a time when the completion of the curtain wall and the opening of the hotel were hopelessly behind schedule, defendants, by Kirshner acting in his capacity as the president of Old Seagrave Corporation and Chief Executive Officer of Flour City or, alternatively, acting individually, represented to plaintiffs that if defendants were paid an additional $750,000 above and beyond any sums due them under the Subcontract, defendants would work on an overtime schedule and do whatever was possible to expedite their work.

¶ 49: In or about April, 1981 in New York, New York, at a time when the completion of the curtain wall and the opening of the Hotel were

even further hopelessly behind schedule, defendants, by Kirshner acting in his capacity as an agent for the other defendants, or alternatively, acting individually, represented to plaintiffs that if defendants were paid an additional $100,000 above and beyond any sums due them under the Subcontract, defendants would immediately take all steps required to perform the Subcontract in a timely fashion.

¶ 50: At or about this time, defendant Kirshner also represented that the curtain wall work on the project would be entirely completed no later than June 15, 1981. It was also understood that if this date or any of several other agreed upon dates were not met, the entire $100,000 would be refunded to HCI. Neither the June 15, 1981 date or any of the other agreed upon dates were met by Flour City, nor was the $100,000 ever refunded.

**4.** *See* note 2, *supra.*

**5.** *See* Complaint ¶¶ 32, 33 at note 2, *supra.*

ready knew of those commitments, defendants argue, they could not have been misled by defendants' misrepresentations.

Defendants' argument is not without force. If plaintiffs had "complete and true knowledge of the facts" supposedly misrepresented, they would have no grounds for claiming fraud. *Rosenbloom v. Adams, Scott & Conway, Inc.*, 521 F.Supp. 372, 390 (S.D.N.Y.1981) (Cooper, J.), *aff'd*, 688 F.2d 816 (2d Cir.1982). However, reading the complaint "in the light most favorable to plaintiff[s], and with every doubt resolved in [their] behalf," 5 Wright & Miller, Federal Practice and Procedure: Civil § 1357 (1969), the court cannot find that plaintiffs necessarily had such knowledge. *See, Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The court cannot, at this stage in the litigation, determine whether the information communicated to plaintiffs' agent so fully apprised plaintiffs of the extent and implications of defendants' other commitments, that plaintiffs could not, as a matter of law, have relied on defendant Kirshner's subsequent representations of defendants' intention to perform. In the cases cited by defendants, the plaintiffs were unquestionably completely aware of the exact facts they claimed had been misrepresented to them. In *200 East End Ave. Corp. v. General Electric Co.*, 5 A.D.2d 415, 172 N.Y.S.2d 409 (1st Dep't. 1958), *aff'd*, 6 N.Y.2d 731, 185 N.Y.S.2d 816, 158 N.E.2d 508 (1959), the engineer employed by the plaintiff building owner was fully aware of the capabilities of the air conditioning system that plaintiff claimed to have bought because of a misrepresentation as to the system's capabilities. In *Young v. Karol*, 83 Misc.2d 859, 373 N.Y.S.2d 949 (App. Term 2d and 11th Dist.1975), the plaintiff claimed to have bought a home in reliance on a representation that it was connected to the sewer system. The evidence showed that plaintiff knew that it was not connected at the time of the closing. This case, at this stage, is simply not as clear. Precisely what was known to plaintiffs and what conclusions they should have drawn from their knowledge are questions that cannot be resolved on the basis of the complaint alone. While the evidence may show that plaintiffs were, in fact, fully aware of defendants' other commitments, it does not appear "beyond doubt" that plaintiffs can adduce no facts which would prove otherwise. Dismissal of the claim is therefore inappropriate. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).[6]

## THE NEGLIGENT MISREPRESENTATION CLAIMS

■ Plaintiffs' fourth and sixth claims concern the same representations alleged in the third and fifth claims to have been made by defendant Kirshner to induce plaintiffs to make the $750,000 and $100,000 payments. The theory asserted in these claims is not fraud, however, but negligent misrepresentation. Defendants insist that plaintiffs have failed to state a valid claim because they have not specifically alleged what duty defendants owed to plaintiffs. A negligent misrepresentation is not actionable unless made "to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all." *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 478, 372 N.E.2d 315, 319 (1977).

This argument is untenable. Plaintiffs allege that defendants were bound by contract to perform the curtain wall work. While they do not, in so many words, allege that defendants' duty to refrain from negligent misrepresentations arose from that contract, such is the plain and obvious intended meaning of their pleadings.

---

**6.** In view of the court's determination that a question of fact exists as to when plaintiffs became aware of the facts allegedly misrepresented, it is unnecessary to address defendants' argument that plaintiffs waived their claim for fraudulent inducement of the Subcontract by continuing to "accept its benefits" after acquiring knowledge of the facts. Defendant Seagrave's Memorandum p. 13.

■ Nevertheless, plaintiffs' negligent misrepresentation claims are ambiguously stated. The theory underlying their fraud claims is that defendants misrepresented their intent to perform as promised. Nowhere in their memorandum opposing defendants' motion do plaintiffs argue that any other material fact was misrepresented. While the negligence claims are virtually identical to the fraud claims, plaintiffs specifically drop the allegation that "defendants had no intention of performing the curtain wall work as promised," Complaint ¶¶ 37, 51, and allege only that defendant Kirshner's representations "were made in reckless disregard of the facts known to Kirshner." Complaint ¶¶ 43, 57. Plaintiffs can thus no longer be alleging that the material fact which was misrepresented to them was defendants' intent to perform. Precisely what fact was allegedly negligently misrepresented is not clear from plaintiffs' pleadings.

Although the rigorous pleading standards of F.R.Civ.P. 9(b) do not apply to this claim, Rule 8 does require that defendants be given fair notice of the claims against them. Since plaintiffs are not alleging that defendants' intentions were misrepresented, and mere promises of future performance cannot themselves be actionable misrepresentations, *Cranston Print Works Co. v. Brockmann International A.G., supra,* plaintiffs are directed to submit a supplemental pleading clarifying the facts alleged to have been misrepresented by defendant Kirshner's promises to perform the curtain wall work.

## THE DURESS CLAIMS

■ Plaintiffs' seventh and eighth claims allege that plaintiffs made the $750,-000 and $100,000 payments under duress. Defendants contend that plaintiffs have merely stated conclusory allegations and have pleaded no facts that would substantiate their claim. This argument must be rejected as plaintiffs have pleaded the requisite elements of a claim for economic duress. The New York Court of Appeals defined the requirements of a duress claim in cases such as this in *Austin Instru-*

*ment, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 324 N.Y.S.2d 22, 272 N.E.2d 533 (1971). Plaintiff must show that defendant threatened to breach a contract by withholding needed goods (or services) unless an additional payment was made. Plaintiff must also prove that it could not obtain what it needed from another source and that a breach of contract action would not have provided adequate relief. Here, plaintiffs have alleged a threat to stop work in breach of the subcontract unless the two payments were made. They have further alleged that the work on the curtain wall had progressed past the point where another subcontractor could have taken over the work. Finally, they have alleged that a breach of contract lawsuit would have offered inadequate relief as it would not have enabled plaintiffs to complete the already seriously delayed construction of the hotel. These pleadings certainly meet the standards of F.R.Civ.P. 8. They give defendants "fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." Wright & Miller, Federal Practice and Procedure: Civil § 1215 (1969).

■ Defendants' cases are not to the contrary. In *30 East End Inc. v. World Steel Products Corp.,* 110 N.Y.S.2d 754 (Sup.Ct.Bronx 1952), the alleged duress arose from defendant's threat to withhold its consent if plaintiff sought to obtain needed building materials from a specific supplier. The court held the complaint insufficient because plaintiff had not alleged anything that would indicate that defendant's consent was necessary. Beyond the mere conclusory allegation of duress, there was nothing in the pleadings indicative of coercion. In contrast, plaintiffs here have alleged that defendants threatened to stop work, something they were certainly in a position to do. In *Wolfson v. Babyhood Industries, Inc.,* 121 N.Y.S.2d 820 (Sup.Ct. Kings 1953), a duress claim was dismissed because plaintiff alleged only that defendant threatened to breach its contract. Such a threat, without more, is not actionable duress. *Clasen v. Doherty,* 242 A.D. 502,

275 N.Y.S. 958 (1st Dep't.1934). Here, plaintiffs have also alleged that the partially completed state of the work prevented them from finding a replacement for defendants, and that their need to finish the work promptly rendered their remedy at law inadequate.

■ Defendants also argue that plaintiffs have waived any duress claim, as a matter of law, by failing to assert the claim promptly after the cause of action arose. Whether the claim was asserted timely or waived by delay depends, however, on all the attendant circumstances. *See, In re National Student Marketing Litigation,* 78 F.R.D. 726 (D.D.C.1978), *aff'd sub nom. Lipsig v. National Student Marketing Corp.,* 663 F.2d 178 (D.C.Cir.1980). Defendants' own cases indicate that the determination of waiver was made after an analysis of all the relevant facts. *See, Joseph F. Egan, Inc. v. City of New York,* 17 N.Y.2d 90, 268 N.Y.S.2d 301, 215 N.E.2d 490 (1966); *Port Chester Electrical Construction Corp. v. Hastings Terraces, Inc.,* 284 A.D. 966, 134 N.Y.S.2d 656 (2d Dep't. 1954). Once again, it cannot be said to be "beyond doubt" that plaintiffs could not prove any facts that would substantiate their claims. *Conley v. Gibson, supra.*

## MOTION OF THE VISTA DEFENDANTS

■ The Vista defendants have moved for dismissal of the fraud, negligent misrepresentation and duress claims arising out of the $100,000 payment. They purport to move under F.R.Civ.P. 56, as well as 12(b)(6), but in light of their failure to comply with Civil Rule 3(g) of this court, and their failure to introduce any affidavits based on personal knowledge with their moving papers, the court will not look beyond the complaint.[7]

The complaint alleges that on or about September 30, 1980, the Vista defendants sold substantially all of their assets to defendant Seagrave, which assumed the Vista defendants' rights and obligations under the subcontract. Since the $100,000 payment was allegedly made in or about April, 1981, defendants argue, the alleged fraud, negligence and duress could only have been the responsibility of Seagrave.

Despite the sale of assets, there is nothing in the complaint that would allow the court to conclude that the Vista defendants could not have had any continued involvement with the hotel construction project. The precise relationship between defendant Kirshner and the Vista defendants, and between the Vista defendants and Seagrave, at the time of the alleged misrepresentations and threats, is not clear on the face of the complaint. Therefore, the Vista defendants have not shown that the allegations of the complaint themselves preclude plaintiffs from asserting their fraud, negligent misrepresentation and duress claims against them.

## CONCLUSION

Defendants' motion to dismiss the second through eighth claims of the amended complaint is denied. The Vista defendants' motion to dismiss the fifth, sixth and eighth claims of the amended complaint is denied. Plaintiffs are instructed to submit a supplemental pleading within 10 days of the filing of this opinion, clarifying the facts alleged in the fourth and sixth claims to have been negligently misrepresented by defendant Kirshner.

IT IS SO ORDERED.

■

---

7. Rule 3(g) states in part:

Upon any motion for summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.