**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**MASON, PERRIN & KANOVSKY, Arthur D. Mason, Richard P. Perrin, Helen R. Kanovsky, James F. McConnell and Mary V. Harcar, Defendants.**

No. 87 Civ. 9269 (RWS).

United States District Court, S.D. New York.

June 29, 1988.

Arnoff & Siskind, P.C., New York City, for plaintiff; Norman B. Arnoff, Steven L. Siskind, Linda K. Brockett, of counsel.

O'Dea & Mason, Washington, D.C., for defendant Mason; James L. O'Dea, III, of counsel.

Mark Grossman, New York City, for defendant Perrin.

Philip G. Schnelwar, White Plains, N.Y., Duncan, Weinberg, Miller & Pembroke, P.C., Washington, D.C., for defendant Helen R. Kanovsky; Wallace L. Duncan, Eli D. Eilbott, of counsel.

Gerst, Heffner & Foldes, Washington, D.C., Chalos, English & Brown, P.C., New York City, for defendant Harcar; Michael G. Chalos, Peter Skoufalos, Arnold B. Podgorsky, of counsel.

James F. McConnell, Jr., Washington, D.C., pro se.

## OPINION

SWEET, District Judge.

Defendants Arthur D. Mason ("Mason"), Richard P. Perrin ("Perrin"), Helen R. Kanovsky ("Kanovsky"), James F. McConnell ("McConnell") and Mary V. Harcar ("Harcar") have moved under Fed.R.Civ.P. 12(b)(2) to dismiss the complaint filed against them and the law firm, Mason Perrin & Kanovsky ("MP & K"), by plaintiff National Union Fire Insurance Company of Pittsburgh, PA. ("National") for lack of personal jurisdiction. Harcar and Kanovsky have also moved pursuant to Fed.R. Civ.P. 11 for costs and attorney's fees incurred in defending against the complaint. Upon the findings and conclusions set forth below, the motions of Harcar and McConnell are granted, and the motions of Mason, Perrin and Kanovsky are denied, as are the Rule 11 motions.

*The Complaint*

National Union is a Pennsylvania corporation with its principal offices in New York City. The defendants are lawyers practicing in Washington, D.C. and residing in Washington D.C., Maryland and Virginia. Prior to forming MP & K in February 1986, Mason, Perrin and Kanovsky had been members of Leff & Mason, a law firm with offices in California and the District of Columbia. From the period between August 1985 and January 1986, Harcar was employed as "special tax counsel" by Leff & Mason. Harcar does not admit or deny being a partner in MP & K. McConnell, it appears, did not work for Leff & Mason but was employed as "of counsel" to MP & K from March 1, 1986 until July 31, 1986 when MP & K was dissolved.

The complaint seeks declaratory relief rescinding a lawyers professional liability policy (the "policy") issued by National to MP & K and its employees on February 3, 1986. The complaint also seeks damages for legal fees and expenses National has incurred defending numerous securities fraud claims against four of the five defendants. The complaint alleges that Mason made material misrepresentations in his firm's application for liability insurance and fraudulently induced National to issue the policy.

MP & K's application for the policy was prepared in Washington, D.C. and delivered to an insurance broker, Dalley & Wilkes, Inc., located in Washington, D.C. All contacts concerning the policy were between MP & K and the broker, who selected National as the carrier. There were no direct negotiations between MP & K and National. MP & K received its copy of the policy from the Washington broker, and the execution of the policy took place in Washington. MP & K made premium payments to a company named "TIFCO" located in Maryland. MP & K notified National of lawsuits filed against the firm and the partners by contacting the Washington bro-

ker and National's claims department which is located in New Jersey. In October 1986, pursuant to the terms of the policy, MP & K elected to cancel the policy effective November 15, 1986. Thereafter, certain partners of MP & K exercised their right under the policy's terms to obtain an extended reporting period for which the partners again dealt with a local insurance broker, Rossman–Hurt–Hoffman, Inc. of Maryland.

None of the defendants is admitted to practice law in New York. None of the defendants maintains a residence, office, telephone listing, mailing address, or bank account or owns any assets in New York. During its brief existence, MP & K did not maintain an office, telephone listing, mailing address, or bank account or have any representatives in New York. Finally, Leff & Mason did not maintain an office, telephone listing, mailing address or bank account or own assets or have any representatives in New York.

In 1985, Leff & Mason submitted Blue Sky filings to officials in New York and other states on behalf of its client Nashua Trust Company ("NATCO"), a Texas corporation, in connection with the offering of interests in nine limited partnerships ("NATCO limited partnerships") which were being marketed to finance NATCO's rehabilitation of properties along the Boardwalk in Atlantic City, New Jersey. During 1985 and early 1986, Leff & Mason and MP & K corresponded by mail with officials from the real estate financing bureau in the Attorney General's office for the state of New York in connection with the requested exemptions for the limited partnership offerings.

Since July 1986, several hundred investors in the NATCO limited partnerships have commenced actions against NATCO and its principals alleging violations of the federal securities laws. Mason, Perrin, Kanovsky and McConnell have been named as defendants in many of these lawsuits some of which were commenced in New York. Harcar has not been made a defendant in any of the lawsuits to date. National has assumed the defense of these actions which have been consolidated for pretrial purposes before the federal district court in Connecticut (the "Boardwalk Marketplace Securities Litigation"). In addition, on September 16, 1987, Mason was indicted by a federal grand jury in the Southern District of New York. Mason and Perrin have also been indicted by a New York County grand jury. Both indictments relate to the allegedly fraudulent offering and sale of the NATCO limited partnerships. It appears that NATCO is presently in bankruptcy proceedings.

*The Motions to Dismiss*

In a diversity action, the law of the state in which the district court sits governs personal jurisdiction over a nonresident defendant. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). National asserts that personal jurisdiction exists over each of the defendants under sections 301 and 302 of the New York Civil Practice Law and Rules (McKinney's 1972 & Supp.1988) which set forth the parameters of New York's long-arm jurisdiction.

Section 301 provides that "a court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Personal jurisdiction in New York may be obtained under section 301 with respect to any cause of action if the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [its] 'presence' in this jurisdiction." *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir.1983) (quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 429 (1964)). New York courts have applied a pragmatic test for section 301 jurisdiction focusing on the following factors: "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery*, 763 F.2d at 58. A foreign corporation is subject to jurisdiction in New York if it does business here "not occasionally or casually, but with a fair measure of permanence and continui-

ty." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). Finally, the court must determine whether "the quality and nature of the corporation's contacts with the State [are] sufficient to make it reasonable and just according to 'traditional notions of fair play and substantial justice' that it be required to defend the action here." *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692 (1982) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

█ National has failed to make out even a *prima facie* showing that the defendants are subject to jurisdiction under section 301. Defendants' contacts to New York are limited to correspondence and regulatory filings made by two law firms of which they were either members or employees on behalf of a Texas client in connection with the client's offering of securities in New York and elsewhere. All of defendants' legal work for the sponsor of the partnerships was performed in Washington, D.C. The defendants did not provide legal services in New York or visit New York on their client's behalf. Furthermore, neither Leff & Mason nor MP & K offered or sold any securities to investors in New York. The defendants do not exhibit any of the common indicia of presence in New York such as the maintenance of an office, telephone, mailing address, bank account or the holding of assets or real estate in New York. In short, the mailing of regulatory filings and correspondence related thereto into a state by a non-resident law firm on behalf of a non-resident client is not sufficient to support a finding that the law firm is present and doing business in that state.

█ Similarly, personal jurisdiction cannot be obtained over the defendants under section 302(a)(1). Section 302(a)(1) permits personal jurisdiction over any person who "transacts any business within the state or contracts anywhere to supply goods or services in the state" with respect to a cause of action arising from that transaction of business or contract to provide services. Although the "showing necessary for a finding that defendant 'transacted business ... is considerably less than that need to establish defendant's 'doing business' ...," *Hoffritz for Cutlery*, 763 F.2d at 58, jurisdiction under section 302(a)(1) does not exist if the "totality of the circumstances," *Sterling Nat'l Bank & Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975), does not establish that the defendant "purposefully availed himself of the privilege of conducting activities in New York State." *Current Textiles Corp. v. Ava Indus., Inc.*, 624 F.Supp. 819, 821 (S.D.N.Y. 1985).

First, National's cause of action does not arise out of the alleged acts of defendants in New York. The action for rescission of the policy is based on alleged misrepresentations made at the time MP & K applied for the policy, and all the events relating to the application for and the execution of the policy took place in Washington, D.C. Second, the defendants have not transacted any business in New York. These attorneys submitted regulatory filings in New York in order to permit their client, not their law firm, to sell interests in limited partnerships in New York. Although the legal services provided by a law firm may facilitate the client's business activities in another state, those activities are not attributable to the law firm for the purposes of personal jurisdiction where federal jurisdiction is predicated on diversity of citizenship. The New York County indictment indicates that a grand jury has found acts by Mason and Perrin in New York. However, the indictment cannot be used to establish that the defendants have transacted business here. Therefore, by preparing documents in Washington, D.C. and transmitting them to regulatory authorities in New York on behalf of a non-resident client, these defendants cannot be deemed purposefully to have availed themselves of the privilege of conducting activities in New York. For the same reason, personal jurisdiction does not exist under section 302(a)(3)(i), which requires that the defendant "regularly does or solicits business, or engages in any other persistent course of

conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state."

■ National contends that by executing the insurance policy, the defendants agreed to provide services in New York. National refers to the policy's cooperation clause which requires that the insured cooperate with the insurer in assisting and making settlements and by attending hearings and trials and giving evidence. The cases cited by National, however, do not hold that a cooperation clause constitutes a contract to provide services such that the insured can be subjected to personal jurisdiction in any state in which the insurer performs under the policy. In *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 454 F.Supp. 198 (S.D.N.Y.1978), the defendant insurance company was found to have transacted business in New York by contracting to provide a service—insurance—in New York. In *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965) and *West Mountain Corp. v. Seasons of Leisure Int'l, Inc.*, 82 A.D.2d 931, 440 N.Y.S.2d 729 (3d Dep't 1981), the defendants had contracted either to deliver products or to provide building services to plaintiff in New York. In *Goldberg v. Empire Fire and Marine Ins. Co.*, 79 A.D.2d 533, 433 N.Y.S.2d 464 (1st Dep't 1980), jurisdiction was based on the defendant's transaction of business in New York, not on a contract for the provision of goods or services. Finally, in *Pyramid Co. of Ithaca v. The Original Great American Chocolate Chip Cookie Co.*, 102 Misc.2d 1056, 425 N.Y.S.2d 230 (S.Ct. Onondaga Cty. 1980), the defendant had contracted to establish and operate a retail establishment on commercial space leased from plaintiff. Here, the cooperation clause simply embodies the implied covenant that an insured not stand in the way of the insurer's performance. National has failed to offer a rationale to support its claim that a cooperation clause in an insurance policy can be asserted as a basis for personal jurisdiction.

■ The only remaining basis for personal jurisdiction over the defendants is section 302(a)(3)(ii) which provides for jurisdiction over any nondomiciliary who "commits a tortious act without the state causing injury to person or property within the state, …, if he … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate … commerce." National alleges that by making material misrepresentations concerning ownership of a Connecticut banking corporation and by failing to disclose his allegedly close business and personal relationship with John Galanis, a principal of NATCO who had previously been convicted of securities fraud, Mason fraudulently induced National into agreeing to provide MP & K with professional liability insurance. Thus, National has alleged an out-of-state fraud in connection with the procurement of an insurance policy that shifted the risk of litigation in New York from defendants to National. National contends that Mason and his partners could reasonably have expected Mason's misrepresentations to have consequences in New York since they knew that NATCO limited partnership interests would be offered in the state and should have foreseen the possibility of civil suits in New York in connection with the offering. National alleges that it has been injured in New York by the invocation of its obligation under the policy to defend actions that have been filed against defendants in New York. Finally, National asserts that as members of a law firm engaged in representing clients from several states in multistate securities offerings, defendants derived substantial revenue from interstate commerce.

With respect to defendants Mason, Perrin and Kanovsky, National's allegations are sufficient to establish jurisdiction under section 302(a)(3)(ii). First, the complaint adequately pleads the tort of fraudulent misrepresentation of present or past facts on the part of Mason, *see Hotel Constructors, Inc. v. Seagrave Corp.*, 574 F.Supp. 384, 387, 389 (S.D.N.Y.1983), and Mason's allegedly fraudulent misrepresentations in procuring the policy are attributable to his partners. Second, National has shown that during the twelve months before MP & K

obtained the policy, the partners of MP & K had assisted in the preparation of nine limited partnership offerings in New York and elsewhere for a company whose principal had previously been convicted of securities fraud. It was foreseeable that Mason's misrepresentations would have consequences in New York stemming from (i) investor suits that National would be obligated to defend and (ii) legal action in New York by National to void the policy. Third, National has alleged that for services rendered in connection with the multistate NATCO limited partnership offerings, MP & K was to be paid a fee of $300,000. Although it appears that MP & K did not receive this fee before NATCO filed for bankruptcy and the account remains outstanding, none of the defendants has disputed National's contention that MP & K derived substantial income from interstate commerce.

Defendants Mason, Perrin and Kanovsky contend, however, that National has failed to carry its burden of establishing injury in New York. They point out that the civil actions relating to the NATCO limited partnerships have been transferred to Connecticut and argue that any loss suffered by National in New York as a result of litigation expenses incurred in Connecticut is the result solely of National's domicile in New York and, therefore, cannot satisfy section 302(a)(3)(ii)'s requirement that the injury occur in New York. *See Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122 (1980); *Cooperstein v. Pan–Oceanic Marine, Inc.*, 124 A.D.2d 632, 507 N.Y.S.2d 893, 895 (2d Dep't 1986), *appeal denied*, 69 N.Y.2d 611, ── N.Y.S.2d ──, 511 N.E.2d 84 (1987). However, several lawsuits were initially filed in New York, and National has engaged New York counsel to defend them. The fact that the suits have temporarily been transferred to Connecticut by the Judicial Panel on Multidistrict Litigation does not diminish the significance of National's obligation to defend all actions filed in New York to their final resolution. National's claim of injury, therefore, does not rest solely on the claim of pecuniary loss in New York; it rests on the fact that

National has had to assume the obligation to defend lawsuits filed in New York. Thus, there is adequate basis for a finding that the "impact of the tort occurred within the state." *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 311 (S.D.N.Y.1983).

In sum, although New York has not extended the jurisdictional reach of its courts to the fullest extent permissible under the Constitution, *Longines–Wittnauer Watch Co.*, 15 N.Y.2d 459–61, 261 N.Y.S.2d at 20–21, 209 N.E.2d at 76–77, section 302(a)(3)(ii) broadly extends the power of its courts to obtain personal jurisdiction over parties whose out-of-state acts have foreseeable injurious consequences in New York. Prior to obtaining professional liability litigation and indemnity insurance from a New York insurer, Mason, Perrin and Kanovsky had provided legal services in connection with the offering and sale of securities in New York and could reasonably have foreseen that claims would be asserted against them in New York under the federal securities laws. Their appearance in New York to defend the New York insurer's claim that they procured the litigation insurance through fraud does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.

■ With respect to defendants Harcar and McConnell, however, there is no basis for personal jurisdiction. First, Harcar has not been named as a defendant in any of the pending civil actions, and National cannot allege any injury in New York sustained on her behalf. Second, McConnell was not a partner in MP & K and did not share in the firm's revenues from interstate transactions. McConnell was of counsel to the firm for five months between March and July 1986, and there is no basis for a finding that McConnell earned income other than from the salary he received from the Washington, D.C. firm. Moreover, because McConnell was not a member of MP & K, the tortious acts of Mason in procuring the policy cannot be attributed to McConnell.

Rule 11 requires that pleadings be "well grounded in fact" and based upon belief "formed after reasonable inquiry." Harcar's motion for sanctions presents a close question. On the one hand, Harcar was represented to be a partner at MP & K in the firm's application for the policy. On the other hand, she has not been named as a defendant in any of the pending civil suits which National is obligated to defend under the policy. Thus, while there may have been some predicate for National's arguments concerning jurisdiction on the basis of acts in New York by MP & K partners, National has not suffered any injury in New York on her account. On this record and at this stage of the proceedings, the requirements of Rule 11 have not been met.

Upon the findings and conclusions set forth above, the motions to dismiss the complaint as against defendants Harcar and McConnell are granted. The motions to dismiss of defendants Mason, Perrin and Kanovsky are denied, as are the Rule 11 motions of Harcar and Kanovsky.

IT IS SO ORDERED.