ALFRED H. NEWBURGER et al., Appellants, *v.* SAMUEL L. LUBELL, Respondent, Impleaded with Another.

(Argued October 24, 1934; decided November 27, 1934.)

*Osmond K. Fraenkel* for appellants. The trial court's direction of a verdict in plaintiffs' favor was correct. (*People* v. *Metropolitan Surety Co.,* 175 App. Div. 43; *National Surety Co.* v. *National City Bank,* 184 App. Div. 771; *Commercial Casualty Ins. Co.* v. *Capital City Surety Co.,* 224 App. Div. 500, 553; *Howell* v. *Commissioner of Internal Revenue,* 69 Fed. Rep. [2d] 447; *Cuyler* v. *Ensworth,* 6 Paige Ch. 32; *Liberty Mutual Ins. Co.* v. *Colon,* 260 N. Y. 305; *Phœnix Indemnity Co.* v. *Staten Island R. T. Co.,* 251 N. Y. 127; 281 U. S. 98; *Eissing Chemical Co.* v. *Peoples Nat. Bank,* 205 App. Div. 89; 237 N. Y. 532; *Haverhill* v. *International Ry. Co.,* 217 App. Div. 521; *Featherston* v. *N. & C. Turnpike Road,* 71 Hun, 109; *City of Anderson* v. *Fleming,* 160 Ind. 597; *Easterly* v. *Barber,* 66 N. Y. 433; *Dodd* v. *Winn,* 27 Miss. 501; *Weed* v. *Calkins,* 24 Hun, 582.)

*Morton L. Deitch* and *Sol M. Stroock* for respondent. The reversal by the Appellate Division of the judgment

directed in plaintiffs' favor was `proper. (*Harbeck* v. *Vanderbilt*, 20 N. Y. 395; *Booth* v. *Farmers Bank*, 74 N. Y. 228; *Clark* v. *Norman*, 68 Hun, 372; *Benjamin* v. *Ver Nooy*, 36 App. Div. 581; 168 N. Y. 578; *Bath Gas Light Co.* v. *Rowland*, 84 App. Div. 563; *Haverhill* v. *International Ry. Co.*, 217 App. Div. 521; 244 N. Y. 582; *People ex rel. Bacon* v. *McHenry*, 19 Wend. 482; *Gouert* v. *Mechanics & Metals Nat. Bank*, 191 App. Div. 854; 233 N. Y. 576; *Gillmore* v. *Equitable Surety Co.*, 228 App. Div. 188.) The alleged subsequent verbal reinstatement of the guaranty did not affect respondent's position. (*Wilkes Barre Realty Co.* v. *Powell*, 86 Misc. Rep. 321; *Warren* v. *Lyons*, 152 Mass. 310; Cons. Laws, ch. 12, § 235.)

CRANE, J. This appeal relates to the action of three brothers who were engaged in business together in New York city. The names are Jacob Lubell, Abraham Lubell and Samuel Lubell. Jacob and Abraham, as a side issue or activity, dealt or speculated in stocks and carried accounts with the plaintiffs, who are stockbrokers, doing business under the name of Newburger, Henderson & Loeb. Samuel had no account with the firm but became a guarantor of his brother Jacob's account, by writing dated November 13, 1929. Prior thereto and on October 25, 1929, Abraham had also guaranteed his brother Jacob's account. These two brothers, therefore, Abraham and Samuel, became co-sureties for their brother Jacob, with the same force and effect as though they had signed one instrument. (2 Williston on Contracts, § 1277.) As security for this guaranty both Abraham and Samuel had pledged with the plaintiffs securities, Samuel $50,000 in cash, 105 shares of Chase Bank stock and 100 shares of the Irving Trust Company stock. Abraham's pledge was ample security for this guaranty. These guaranties were in writing, signed by each guarantor and filed away by the plaintiffs in their office.

After the fall of 1929, it is a matter of public knowledge that stock speculation became rather risky and that the

market materially declined. On or prior to April 25, 1930, Abraham notified the plaintiffs that he withdrew his guaranty and would no longer be liable for his brother's account, and the firm in reply sent him this letter:

" NEWBURGER, HENDERSON & LOEB
100 Broadway
New York

"*April 25th*, 1930.

" Mr. A. P. LUBELL
" 806 Broadway
" New York, N. Y.

" DEAR SIR: We wish to acknowledge receipt of your letter of even date, and in accordance with your instructions, we have today cancelled your guaranty on the accounts of

" A. D. Lubell
" J. J. Lubell
" Very truly yours,
" NEWBURGER, HENDERSON & LOEB."

What was the effect of this release of guaranty upon the co-surety, Samuel Lubell? It was to reduce his liability for Jacob's account in proportion to the release given his co-surety, or, in this instance, one-half. Instead of being liable for the whole of Jacob's deficit, he would only be liable thereafter for one-half. This will be discussed later as we pass on to other facts.

Between April 25 and May 5 the market was rapidly declining. Jacob's securities and Abraham's securities in his own account as well as those held as pledge for Jacob's account — all were dropping rapidly in the market — and Jacob as well as Abraham was called upon for more margin. Then, according to the testimony of one of the plaintiffs, Abraham came to the office, 100 Broadway, New York city, and said that he would renew his guaranty of Jacob's account, but he gave no renewal in writing, nor was any demanded of him. The plaintiffs say that the arrangement was that they

should tear up Abraham's letter demanding release and that Abraham would destroy the plaintiffs' letter which he had received releasing him. In other words, a guaranty beginning with May 5, 1930, was to be created by the destruction of writings, properly called releases, and without any note or memorandum or writing establishing the new contract. The Personal Property Law (§ 31, subd. 2; Cons. Laws, ch. 41) requires that an agreement to pay the debt of another must be in writing, signed by the party to be bound thereby; otherwise it is void. No such writing was given to create the guaranty May 5, 1930, and the oral arrangement was, therefore, absolutely void. The guaranty of Abraham, made in 1929 in writing, was ended on April 25, 1930, by release in writing. For ten days thereafter it is conceded that there was no guaranty in existence from Abraham. All parties to this litigation speak of a renewal contract having been made on May 5, and made orally, not in writing. When a guaranty has once been released, wiped out or paid, a new guaranty or a renewal of a guaranty must also be in writing, to comply with the Personal Property Law. It is many times hard enough for a man to pay his own debts without assuming the debts of others, and the law has very wisely required such an assumption or obligation to be reduced by formality to writing, where the nature of the undertaking will not be left to the uncertainty of memory or the misunderstanding of parties.

The very danger which the law anticipated arises in this case, because all this oral testimony given by the plaintiffs' witness is denied by Abraham Lubell.

Samuel Lubell was not consulted about any of these matters and knew nothing about the release of Abraham's guaranty. No communication was had with him or notice sent him.

Action was commenced against Samuel Lubell on his guaranty on the 10th day of March, 1931, and the defendant Abraham Lubell was joined as a party defendant by

an order dated the third of the following December. The complaint alleged that Jacob's account was liquidated December 19, 1930, showing a debit balance owing to the plaintiffs of $48,937.23; that the balance of Samuel's cash remaining in the hands of the plaintiffs, $17,033.03, had been applied in reducing Jacob's deficit, together with $17,209.03, balance of the moneys which the plaintiffs had belonging to Abraham, leaving, together with some other deductions, $14,532.97 as Jacob's deficit, for which Samuel and Abraham were liable.

Samuel, in his answer, set out the release of Abraham and claimed that thereby he was liable for only half of Jacob's deficit, which he was not only ready to pay, but which, by counterclaim, he set up as having been more than paid, to the extent of $4,000. Judgment has gone against Samuel for the full amount, in the sum of $14,412.97, with interest, or a total of $16,209.41, for which he has no contribution against Abraham, who is concededly insolvent. The Appellate Division reversed the judgment and dismissed the complaint as to Samuel, granting a new trial on his counterclaim in order that the amount which he had paid over and above his half of Jacob's deficit might be more satisfactorily proved. We are of the opinion that, in the holding but not the dismissal, the Appellate Division was right for reasons which we shall discuss before we take up the other facts in the case.

Each of several co-sureties is in legal effect as against the others a principal for his proportion of the debt, and a surety as to the rest, and a release of one is, therefore, a release of one who is in part a principal. Releasing or giving time to one co-surety or to one of several principal debtors will discharge the others in respect to the portion of the debt as to which the party released or given time to is a principal (2 Williston on Contracts, § 1263). If there are several sureties liable for the same debt, and the creditor releases one of them from liability, he generally

releases the remaining sureties to the extent that such released surety would otherwise have been liable to contribute to his co-sureties. (1 Brandt on Suretyship & Guaranty [3d ed.], § 496; 2 Williston on Contracts, § 1263; *Morgan* v. *Smith*, 70 N. Y. 537; *Benedict* v. *Rea*, 35 Hun, 34.) Debtor and Creditor Law (Cons. Laws, ch. 12), section 235: " (a) If an obligee releasing or discharging an obligor without express reservation of rights against a co-obligor, then knows or has reason to know that the obligor released or discharged did not pay so much of the claim as he was bound by his contract or relation with that co-obligor to pay, the obligee's claim against that co-obligor shall be satisfied to the amount which the obligee knew or had reason to know that the released or discharged obligor was bound to such co-obligor to pay."

This seems to be the fundamental rule and principle of suretyship for which there are numerous authorities. The plaintiffs, appellants, seek to meet this legal objection by saying that Samuel was in no way injured by Abraham's release; the guaranty having been renewed on May 5th he, Samuel, still has the right of contribution against Abraham. This sounds plausible · because it assumes facts which are not true. It assumes that if Samuel has a right of contribution he can get his money back. The fact is contribution against Abraham is worthless, as he is insolvent. The appellants' distinction between " subrogation " and " contribution " is entirely immaterial to this controversy, as neither exists unless there is first a liability upon the part of Samuel to pay the entire deficit of Jacob. It is this liability we are discussing, and it does not help to decide this question by saying he would not be injured if he has contribution or subrogation. He is not obliged to resort to either of these remedies until the law first declares his liability for the whole. When the plaintiffs knowingly released Abraham they also released Samuel to the extent that

Abraham would have been liable over to him as co-surety which in this instance is one-half. Even if we were to assume as a fact that Abraham's guaranty was restored on May 5, it by no means follows that Samuel was not injured even for the ten days' break. It is conceded that for these ten days there was no guaranty by Abraham. It had been released. What happened during these ten days which Samuel might have prevented?

There was very little, if any, deficit in Jacob's account on April 25, 1930. Even on May 5, 1930, there was only a deficit of $10,684. The market after April 25th started to go down steadily until May 5th, so that the deficit, if any, on April 25th must have been less than this figure At that time Samuel had in excess of $26,000 in cash with the plaintiffs as collateral and at the same time Abraham's account had a large equity. If Samuel had known of the release of Abraham and that he would be liable for those ten days as sole surety for Jacob's growing deficit, he could have immediately ended his guaranty so far as the future was concerned, paid his liability for Jacob's deficit and had a large amount of cash besides his stock securities coming back to him. As it is, during those ten days his liability increased with the increasing deficit in Jacob's account. When asked what he would have done if he had known of the release, the answer was excluded on the plaintiffs' objection. This was probably a correct ruling as the law will presume, in absence of any notice to him, that he would have acted prudently in his own interest. There was, therefore, substantial damage done to Samuel by the release of Abraham, and it is no excuse to say that he was not harmed because he did not know it. Even if we go so far as to say that the above rule of law regarding the release of a co-surety does not apply where the released co-surety is insolvent or no harm is done to the other co-sureties, such is not the case here. On April 25, 1930, as well as May 5, Abraham had large equities in his own accounts with the plaintiffs

and it has by no means been proved that he was insolvent on December 20, 1930, when his securities were sold out by the plaintiffs. Therefore, unless there is something more to be considered, the plaintiffs cannot recover from Samuel more than half of Jacob's deficit. That a surety may at any time terminate his guaranty for the future, see *Emery* v. *Baltz* (94 N. Y. 408); *Reilly* v. *Dodge* (131 N. Y. 153). We conclude, therefore, that the release of Abraham on April 25, released the co-surety Samuel for anything above his half of the deficit.

As stated in the beginning, this action was commenced against Samuel in March of 1931, and the defendant Abraham brought in the following December. As against him the plaintiffs insisted that the controversy should be submitted to arbitration, by reason of their customers' contract. As before stated, he had his own stock transactions with the plaintiffs under an agreement which provided for arbitration in case of dispute. The plaintiffs claimed that this arbitration agreement included disputes regarding the guaranty account. We sustained the plaintiffs' claim (*Matter of Newburger* v. *Lubell*, 257 N. Y. 213). On October 15, 1931, judgment was entered against Abraham on the arbitration award which had been made, wherein it was adjudged " that the guaranty executed by the respondent, Abraham P. Lubell, of the account of his brother, Jacob J. Lubell, was in full force and effect in December, 1930."

After obtaining this judgment on the award, the plaintiffs moved in this action for summary judgment against Abraham, which was granted and judgment was entered against him for the full amount and, as before stated, is uncollected. This judgment against Abraham goes to the extent of showing the amount recovered against him as a co-surety and the extent to which he might have contribution against Samuel, *provided* Samuel's liability existed, but Samuel could always prove both as against these plaintiffs, the principals, and against Abraham,

his co-surety, that no liability did exist for more than one-half of Jacob's deficit by reason of Abraham's release. In other words, he could show and prove as against the plaintiffs that they had fully released Abraham even though they had recovered a judgment against Abraham upon a contrary finding. He was not a party to the arbitration proceedings and had no notice thereof. (1 Freeman on Judgments [5th ed.], §§ 455, 456. To the same effect, *Clark* v. *Norman*, 68 Hun, 372, opinion by HAIGHT, J., subsequently of the Court of Appeals; *Benedict* v. *Rea*, 35 Hun, 34; *Bath Gas Light Co.* v. *Rowland*, 84 App. Div. 563; affd., 178 N. Y. 631; *Morgan* v. *Smith*, 70 N. Y. 537.)

As between the plaintiffs and Abraham the arbitration and the judgment thereon established that he was a surety for his brother Jacob on December 30, 1930. If Samuel had paid the entire amount of the deficit, he could have recovered against Abraham, as a co-surety, his contribution of one-half of the amount. Abraham could not deny that he was a co-surety as this fact had been established as against him. It is another matter to say that what Samuel might have done voluntarily in the way of paying the entire judgment, he can be compelled to do because of this judgment against Abraham. Abraham is a surety and liable for the full amount and judgment has gone against him accordingly, but this does not wipe out the effect of the release given on April 25 upon Samuel's liability as a co-surety. The new guaranty of May 5, even if it were made, was of no effect as to Samuel; *i. e.*, it did not restore his liability as co-surety, and compel him to seek contribution from Abraham.

We, therefore, have arrived at a point where Samuel is not liable for more than one-half of Jacob's deficit by reason of the conceded release of Abraham on April 25, 1930, irrespective of whether there was a new contract of guaranty or a restoration of guaranty made by Abraham May 5, 1930.

All that we have said here would lead to an affirmance of the order and judgment of the Appellate Division, if it were not for the confusion arising from the figures and the facts relating to the sale or disposition of the stock of the Chase Bank and the Irving Trust Company. The conclusion being that Samuel is liable for only one-half of the deficit or judgment against Jacob, the question still remains whether he has paid his half. He says he has, more than his half, by some four thousand dollars, and he has counterclaimed for this amount. The Appellate Division has sent this back for a new trial severing the action and there is no appeal from this part of its decision. But the plaintiffs' complaint cannot be dismissed as there is uncertainty whether Samuel has paid the half which he concedes he owes. The plaintiffs insist that even under the defendant's view of the case, Samuel still owes $2,578.38. The answer depends upon the value of the securities held by the plaintiffs or by or for Samuel.

We, therefore, modify the judgment of the Appellate Division and send the whole case back to Trial Term for judgment in accordance with this opinion, after the determination of the amount which the plaintiffs should be charged with holding or receiving on Samuel's securities.

The judgment should be modified in accordance with this opinion and a new trial granted, with costs to abide the event.

LEHMAN, J. (concurring). The plaintiffs concededly released Abraham Lubell from his guaranty on April 25, 1930, without the knowledge or consent of his co-surety Samuel Lubell. They had the right to do so, though thereby they destroyed the relationship of co-sureties between Samuel Lubell and his brother Abraham and Samuel's right to contribution which arises out of their relationship. The consequence was, however, to release Samuel Lubell from his obligation as guarantor to the extent that by the plaintiffs' voluntary act he lost right of

contribution from Abraham who at that time was concededly solvent.

The plaintiffs had the same right thereafter to accept a new guaranty from Abraham Lubell or any other person as they had to release the old guaranty of Abraham. As between themselves and Abraham, liability under a new guaranty is conclusively established by the judgment against Abraham Lubell. Because of that liability the relationship of co-sureties between Abraham Lubell and Samuel Lubell has again arisen with its consequent right of contribution. In accepting a new guaranty the plaintiffs assumed the risk of the insolvency of the guarantor. They could not, without Samuel Lubell's consent, enlarge his own liability which had previously been partially wiped out and shift to him the risk of insolvency of the guarantor.

POUND, Ch. J., O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur with CRANE, J.; LEHMAN, J., concurs in separate opinion.

Judgment accordingly.