FEDERAL DEPOSIT INSURANCE
CORP., Plaintiff,

v.

Robert BORNE, Gloria Chizner as Exec-
utrix of the Estate of Leo Chizner,
and Jeron Realty, Inc., Defendants.

No. 81 CV 1096 (ERN).

United States District Court,
E.D. New York.

Dec. 21, 1984.

Ira L. Hyams, Jericho, N.Y., for plaintiff.

D'Amato, Forchelli, Libert, Schwartz, Mineo & Weinstein by Jack L. Libert, Richard C. Goldberg, Mineola, N.Y., and Granville Crabtree, Albert Sanchez, Sarasota, Fla., for defendant Borne.

Meissner, Tisch & Kleinberg by Samuel Rosenberg, New York City, for defendant Chizner.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This case is before the Court upon plaintiff's motion for summary judgment and defendant Borne's motion to amend the answer. It arises from three notes which evidence financial transactions related to defendants' real estate business dealings. In essence, the three counts of the complaint comprise three separate lawsuits and will be treated as such. Mindful of the context of summary judgment, the facts are related as they appear in defendants' opposing papers. Significantly, plaintiff's papers do not controvert any of the alleged facts, but do contest their legal consequences.

Robert Borne was president of Twin Ridge Properties, Inc., a subsidiary of Willow Industries, Inc. In 1972 Willow Industries, an entity in which Borne owned stock, developed, through Twin Ridge, a project of garden apartments located in Baltimore. Union Dime Savings Bank and the B.F. Saul Real Estate Investment Trust provided financing in the form of a mortgage commitment. At scheduled intervals, money would be disbursed as the project moved toward completion.

Unfortunately, the scheduled timetable could not be met. In response, Twin Ridge sought an extension of the financing, to which B.F. Saul agreed if Twin Ridge would add $350,000 to the project. Similar to the prior arrangement, this money would be infused into the project in installments as the project neared completion.

Twin Ridge's source of funds was a personal loan from Borne, who consulted Warren Eichele, Vice President of the Franklin National Bank (FNB). Borne explained that B.F. Saul wanted the right to obtain the funds directly from the bank. To accommodate this requirement, Borne applied for a letter of credit on December 17, 1973, which FNB granted to B.F. Saul for the account of Twin Ridge on December 19, 1973. Under the letter, as the architects certified stages of completion of the project, FNB would disburse funds to B.F. Saul by agreeing to pay their drafts drawn on the Twin Ridge account. Apparently, to fund this account, Borne borrowed money from FNB, which funds he loaned to Twin Ridge. When Twin Ridge received this money, B.F. Saul would notify FNB to reduce the letter of credit accordingly.

Documents demonstrate partial performance of what Borne contends was the entire agreement between himself and FNB. On May 10, 1974, when the architects certified the project as 75% complete, Borne disbursed $100,000 to Twin Ridge, and B.F. Saul notified FNB to reduce the letter of credit to $250,000. This process was repeated on June 24, 1974, in the amount of $125,000, which reduced the letter of credit to $125,000. On each occasion, Borne executed a promissory note in favor of FNB. As collateral for the obligations, Borne had pledged shares of Willow Industries valued at $349,500.

Borne's FNB bank ledger reveals that on May 22, 1974 he borrowed $100,000 and on June 24, 1974, $125,000. Both notes were due August 22, 1974. On that date he borrowed $225,000 on a note due September 23, 1974, which was renewed October 23, 1974, due November 22, 1974. Circumstances surrounding this last renewal provide the backdrop of events underlying the counterclaim.

Plaintiff entered the picture when FNB was declared insolvent in October 1974. Borne and Myron Friedman, an investment advisor, met with a Mr. Lebow of the FDIC. They explained the above-related arrangement and the importance of the last installment to successful completion of the project. Lebow renewed the $225,000 note and acknowledged his understanding and comprehension of the transaction. At the time, Lebow "assured me that I should renew the note and that the final installment of the letter of credit would in fact be honored." Borne affidavit ¶ 12. Having received this assurance, Borne did not look elsewhere for financing and renewed the note fully expecting plaintiff to make the last installment on the letter of credit. On October 31, 1974, however, plaintiff informed American Security and Trust Co., the successor to B.F. Saul, that it would not honor the last installment on the letter of credit. Eventually foreclosure ensued, rendering Borne's Willow Industries shares of stock worthless. Subsequently, plaintiff commenced this suit to recover on the October 23, 1974 renewal note.

## I.

Concerning the $225,000 note, which is the subject of Count I of the complaint, Borne relies on U.C.C. § 3–119(1), which provides:

> "As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument."

Borne asserts that the letter of credit was a written agreement executed as part of the same transaction concerning the obligation at issue. Thus, the letter of credit modified the note and as a result, plaintiff's right of enforcement is necessarily conditioned upon its compliance with the letter of credit.

Significantly, neither the note nor the letter of credit refer to one another. *See VonBlaine v. Saunders*, 80 A.2d 52, 53 (D.C.App.1951); *McPherson v. Longview United Pentecostal Church, Inc.*, 540 S.W.2d 424, 432 (Tex.Civ.App.1976). Without the affidavits of Borne, Friedman, and Eichele, a relationship between the note and the letter of credit could not be inferred by reading these documents alone. Borne conceded during his deposition that the letter of credit did not appear to memorialize his recollection of the entire agreement between himself and FNB. In fact, when asked, "What is your recollection of the agreement?", Borne answered, "I think it was oral." He also testified that this agreement was referred to in a "put agreement", identified as Plaintiff's Exhibit 5 during the deposition, which agreement neither side has submitted.

Notably, too, there is no showing that the agreement between Borne and FNB explicitly conditioned repayment of any portion of the funds advanced to Borne upon FNB's honoring the entire letter of credit. *See Horne v. Law Research Service, Inc.*, 35 A.D.2d 931, 316 N.Y.S.2d 367, 369 (1st Dept.1970) (*per curiam*), *aff'd*, 28 N.Y.2d 969, 323 N.Y.S.2d 707, 272 N.E.2d 80 (1971); *see also Liberty Capital Group v. Rich*, 78 A.D.2d 342, 434 N.Y.S.2d 432, 435 (1st Dept.1981); *Paul v. Weiss*, 48 Misc.2d 683, 265 N.Y.S.2d 687, 693 (Sup.Ct. Sullivan Co.1965), *aff'd*, 24 A.D.2d 1054, 265 N.Y.S.2d 625 (3d Dept.1965) (*per curiam*); *compare Hartley v. Hollman*, 376 P.2d 1005, 1007 (Alaska 1962); *Continental Supermarket, etc. v. Soboski*, 210 Pa. Super. 304, 232 A.2d 216 (1967).

From the context of the transactions, one would have expected this term to be part of a written agreement between FNB and Borne. But, to establish that the note is part of another agreement, Borne, of necessity, has supplemented his asserted written agreement (letter of credit) with parol evidence and evidence of partial performance. In this case, the evidence of partial performance does not permit an inference that Borne's obligation to pay the

note of August 22, 1974 is conditioned upon FNB's loaning him an additional $125,000 to be used to fund the account named in the letter of credit. By its terms the letter of credit is for B.F. Saul as between FNB and its customer account, Twin Ridge. *See Fewox v. Tallahassee Bank & Trust Co.,* 249 So.2d 55, 57 (Fla.App.1971), *cert. denied,* 252 So.2d 799 (Fla.1971).

■ Moreover, to satisfy § 3–119(1), the "written agreement" must embody whatever modifies or affects the terms of the note. *See Wayne v. Braun,* 292 N.W.2d 578, 580 (N.Dak.1980); *Sanden v. Hanson,* 201 N.W.2d 404, 408 (N.Dak. 1972); *National Refining Co. v. Zuckerman,* 183 S.W.2d 390, 392 (Mo.App.1944). The terms of an otherwise unambiguous and complete note may not be varied by resort to extra-writing evidence as Borne attempts to do in this case. *Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 56 Ill.Dec. 14, 427 N.E.2d 94, 100 (1981); *see Adamson v. Faircloth,* 158 Ga.App. 401, 280 S.E.2d 376, 377 (1981); *Crosby v. Jordan,* 123 Ga.App. 83, 179 S.E.2d 537, 539 (1970). The parties engaged in what are, on their face, independent contracts designed to accomplish the additional funding of the Twin Ridge development. Additionally, even if the Court were to agree that there is a writing which modifies or affects Borne's obligation to pay the note, Borne cannot enforce the contract embodied by the writing, and, at the same time, inconsistently maintain that he has been discharged from the note. See *Taco Nacho, Inc. v. Hasty House Restaurants, Inc.,* 436 So.2d 403, 405 (Fla.App.1983).

The Court's disposition of the above issue does not preclude Borne from proving a contract which plaintiff breached. Allegedly, this contract arose when Borne explained his arrangement with FNB to plaintiff's representative, Lebow, and Lebow allegedly agreed to fund the last installment on the letter of credit. In his answer, as part of the second affirmative defense, Borne did not allege this theory of plaintiff's liability. In ¶ 10 he stated simply that plaintiff's predecessor, FNB, breached the contract, detailed in ¶¶ 5–9. In the proposed amended answer Borne seeks to preserve this defense as pleaded in the original answer and to reallege similar but slightly altered facts. In the counterclaim, ¶¶ 18–22, both FNB and plaintiff allegedly breached the contract, resulting in a loss of $600,000 (loss of value of Willow Industries stock plus lost rents and profits from Twin Ridge development).

■ The proposed counterclaim appears to be compulsory. See Fed.R.Civ.P. 13(a). The breach occurred on or about October 31, 1974, when plaintiff informed the successor to the beneficiary of the letter of credit that it would not pay the third installment. Borne Affidavit ¶ 12; Friedman Affidavit ¶ 5.

> "In contract cases, the cause of action accrues and the Statute of Limitations begins to run from the time of the breach."

*John J. Kassner & Co. v. City of New York,* 46 N.Y.2d 544, 550, 415 N.Y.S.2d 785, 389 N.E.2d 99 (1979) (citations omitted). Consequently, if Borne had asserted this counterclaim when he filed his answer in March 1981, it would have been time barred under the six-year statute of limitations of N.Y. C.P.L.R. § 213. The time bar reduces the significance of the counterclaim. Borne may only use the counterclaim to defeat his liability on the note, *i.e.,* as a set-off. See 3 Moore's Federal Practice ¶ 13.11.

■ In response to the motion to amend the answer, plaintiff asserts that Borne waived the right to interpose any defense, set-off, or counterclaim in the note.

> "A waiver of the right to assert a setoff or counterclaim is not against public policy and has been enforced by this court (*see Bank of New York v. Cariello,* 69 A.D.2d 805, 415 N.Y.S.2d 65). However, such a waiver will not be enforced so as to bar a viable setoff or counterclaim sounding in fraud (*see Sterling Nat. Bank & Trust Co. of N.Y. v. Giannetti,* 53 A.D.2d 533, 384 N.Y.S.2d 176).

*FDIC v. Frank L. Marino Corp.*, 74 A.D.2d 620, 425 N.Y.S.2d 34, 35–36 (2d Dept.1980) (memorandum). As the Court implies in *Cariello*, this waiver would not preclude a separate, but now time barred, lawsuit. Relying on the rule, however, Borne contends that his claim sounds in fraud. Specifically, Lebow deceived Borne when he "assured" Borne that the rest of the money on the letter of credit would be forthcoming. Buoyed by these assurances, Borne signed the renewal note. Borne Affidavit ¶ 12. Plaintiff counters that Borne was already indebted to the bank when he signed the renewal note on October 23, 1974 and, therefore, plaintiff could have sued him then. Instead, Borne received a gratuitous extension of the obligation.

 Abruptly, what has been offered plainly in a proposed amended answer as a counterclaim for breach of contract is now characterized as fraud. The proposed amendment, however, contains not even a hint that its basis is Lebow's alleged statements nor a claim that plaintiff "knew or should have known at the time Borne signed the renewal note that the rest of the money contracted for in the letter of credit would not be advanced." Defendant's Memorandum of Law filed November 21, 1984 at 15.

"It has long been the law of New York that an expression of opinion may constitute actionable fraud. A statement of a man's opinion, estimate or prediction is a representation of his state of mind and, like his intent, is 'as much a fact as the state of his digestion.' Mere predictions, however, may not form the basis for an action for fraud when both parties have equal access to the facts, or when it is obvious that the declarant is using a subjective standard. In these situations, reliance on the opinions is deemed unreasonable. However, where one party does have superior knowledge, the expression of an opinion implies that the declarant knows facts which support that opinion and that he knows nothing which contradicts the statement."

*Magnaleasing, Inc. v. Staten Island Mall,* 428 F.Supp. 1039, 1042–43 (S.D.N.Y.1977) (citations omitted). Relying on *Magnaleasing, Inc.,* Borne asserts that Lebow had superior knowledge of whether plaintiff would honor the letter of credit. This entire line of argument overlooks the context of a motion to file an amended answer. Nothing in the proposed pleading treats or mentions Lebow's statements, which Borne has labeled as both opinions and assurances, much less the crucial allegation that Lebow did not believe whatever it was (opinion or assurance) that he had represented to Borne.

"A cause of action for fraud can only be based upon the misrepresentation of a present or past fact. The mere failure to keep contractual promises of future acts will not sustain an action for fraud."

*Hotel Constructors, Inc. v. Seagrave Corp.,* 574 F.Supp. 384, 387 (S.D.N.Y.1983) (citations omitted). Moreover,

"[a] purely conclusory allegation that defendants never intended to perform, standing alone, could not convert a claim for breach of contract into one for fraudulent inducement to contract."

*Id.* at 388 (citations omitted). Possibly, Borne can draw a pleading which alleges fraud arising from the transaction at issue, but he has not done so. As a result, on the record as it now stands, the waiver provision of the note defeats the proposed amended answer as it relates to Count I of the complaint; accordingly, plaintiff's motion for summary judgment on Count I of the complaint is granted.

### II.

The second count of the complaint seeks recovery upon a note endorsed by Leo Chizner. On August 19, 1974 Friedman executed a note for $9,000, 7% interest per year, naming Chizner as payee. Chizner endorsed the note, unconditionally guaranteed its payment, and delivered it to FNB. Plaintiff alleges that a balance of $1,013.35 plus interest at 10% per year since June 9, 1976 is now due plus attorney's fees and

costs of collection, all as provided in the note.

■ Chizner raises two separate defenses in his answer. The first is the same as Borne's regarding FNB's alleged breach of the aforementioned letter of credit, and by affidavit, Chizner's attorney relies upon and adopts Borne's papers in support of the defense. There is no evidence, however, which connects this note or Chizner to the letter of credit, a situation confirmed by ¶ 7 of the affidavit of Samuel Rosenberg, attorney for the Chizner estate, to wit:

"7. A trial of this action will establish that Mr. Chizner was an associate and principal with Mr. Borne in various corporations which are part and parcel of this litigation, to wit: Twin Ridge Properties, Inc., Willow Industries, Inc. and Jeron Realty, Inc. Chizner and Borne jointly participated in management decisions as well as financial planning and borrowing in connection with the activities of these corporations. They jointly participated and dealt with the various financial institutions involved with these corporations, including the Franklin National Bank prior to its demise. In short, Chizner's participation in these various activities closely paralleled the activities and the decisions of Mr. Borne. Therefore, the defenses as well as the triable issues clearly demonstrated in the opposition papers on behalf of Mr. Borne apply equally to the defenses and issues as they pertain to the defendant, Chizner."

Despite these allegations, Borne's supporting papers disclose not even an iota of evidence which gives Chizner any rights against FNB. Similarly, concerning the remaining defenses, which Borne also asserts, there is nothing to demonstrate a want of consideration or economic duress by FNB, and neither transaction was usurious.[1]

Accordingly, because the papers reveal no issue of fact concerning Chizner's liability upon the note treated in Count II of the complaint, plaintiff is entitled to summary judgment thereon.

### III.

The third count of the complaint concerns all three defendants. On September 5, 1974, Jeron Realty, Inc. executed and delivered a promissory note for $25,000, 14½% interest per year, due December 5, 1974, to FNB. Prior to delivery Chizner endorsed the note and unconditionally guaranteed payment. On July 15, 1970 Borne and Chizner had also jointly executed a continuing guarantee of payment to FNB of Jeron's obligations. Either Borne or Chizner could cancel his respective guarantee on written notice.

■ In his affidavit, Borne avers that the "loan officer" (unidentified) of FNB told him, "I would have no personal liability for payment of [the note]." Borne Affidavit at 12. As further evidence of his intent not to guarantee this note, which intent he communicated to FNB, he adds

---

**1.** By way of explanation, the complaint is drawn in three counts, which, in terms of the joinder of defendants, merge only in Count III. Allegedly, of the defendants, on Count I Borne alone is liable as the maker of the note, on Count II Chizner alone is liable as the guarantor/endorser of the note, and on Count III Jeron Realty, Inc. is liable as the maker of the note, Chizner is liable as a guarantor/endorser, and Borne is liable as a guarantor. This structuring of the complaint understandably produced separate answers from Chizner and Borne.

Chizner's answer asserts three defenses. The first is the same as Borne's second defense, which relates to the above-mentioned letter of credit. The second defense is actually two defenses: want of consideration and economic duress resulting in contracts of adhesion. The third defense is usury. All the defenses seemingly contest all the counts; however, Chizner has offered only Borne's evidence upon the first defense and no evidence of the other defenses.

Borne's answer follows a similar pattern. His first defense, want of jurisdiction, has been abandoned. His second defense relates to the letter of credit. The third defense is actually two defenses: want of consideration and economic duress resulting in contracts of adhesion. The fourth defense is a set-off assertedly arising because FNB released Donald Zucher from his obligation to purchase the collateral for the note in Count I. Borne has offered no evidence upon the third, fourth, and fifth defenses. *See* Fed.R.Civ.P. 56(e).

that he signed the note only as an officer of Jeron and, in contrast with Chizner, refused to indorse or otherwise guarantee the instrument.

"Where, as here, the guarantor has the right to limit the life of the contract by giving notice to terminate in accordance with its provisions, his right is absolute and if plaintiff, knowing of the guarantor's intent to terminate, acquiesced therein and assured the guarantor that the agreement was no longer in effect and nobody would use it against him, such conduct on its part might well be found to constitute a waiver of the contract requirement of written notice of termination."

*Alside Aluminum Supply Co. v. Berliner,* 32 A.D.2d 731, 302 N.Y.S.2d 180, 181–82 (4th Dept.1969) (memorandum) (citation omitted). Given this statement of law, the only issue in the context of summary judgment is whether Borne's affidavit raises an issue of fact as to whether FNB in effect modified the guarantee by orally waiving the requirement of written cancellation. Under *Berliner,* where an alleged oral modification of the guaranty precluded the entry of summary judgment for the plaintiff, Borne's affidavit raises a genuine issue of material fact. *Cf. Chemical Bank v. Sepler,* 60 N.Y.2d 289, 294 n. 2, 469 N.Y.S.2d 609, 457 N.E.2d 714 (1983). Accordingly, plaintiff's motion for summary judgment upon Count III of the complaint must be denied as to Borne. Similar to Count II, neither Borne nor Chizner has submitted anything which raises any issue of fact concerning the other defenses asserted in the pleadings. *See* n. 1, *supra.*

Based upon the foregoing, plaintiff's motion for summary judgment upon Counts I and II of the complaint is granted, plaintiff's motion for summary judgment upon Count III of the complaint is granted as to Chizner but denied as to Borne, and defendant Borne's motion to amend the answer is granted with the recovery on the counterclaim limited to a set-off of his liability, if any, on Count III.

SO ORDERED.