**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Gloria CHIZNER as Executrix of the Estate of Leo Chizner, Defendant.**

**No. 81 CV 1096 (ERN).**

United States District Court, E.D. New York.

April 18, 1986.

Ira L. Hyams, P.C., Jericho, N.Y., for plaintiff.

Meissner, Tisch & Kleinberg, New York City by Samuel Rosenberg, for defendant.

### MEMORANDUM AND ORDER

NEAHER, District Judge.

This case is before the Court upon plaintiff's motion to amend the complaint, which joined three causes of action upon three notes. *F.D.I.C. v. Borne,* 599 F.Supp. 891, 896 n. 1 (E.D.N.Y.1984).

Plaintiff filed its moving papers prior to a settlement with defendant Borne. Thereafter, negotiations with the estate of defendant Chizner, who died in 1982, proved unfruitful, thus the Court asked that the parties complete briefing of the motion.

Plaintiff and Borne consummated their settlement, which included a provision that if he defaulted on his payments, Borne would accede to the granting of the instant motion. Unfortunately, the proposed amended pleading seeks judgment against Borne and Chizner even though Borne is no longer a party to the suit by virtue of the parties' stipulation of November 25, 1985. This detail poses a relatively minor obstacle in light of the parties' failure to consider the effect of Borne's settlement on the liability of his coguarantors, as more fully developed below. Moreover, the circumstances revealed in the instant record compel the Court in its discretion to deny plaintiff's motion.

Plaintiff seeks to add two causes of action upon two separate notes executed by Willow Industries in favor of the former Franklin National Bank. As previously noted, plaintiff is the Bank's successor in interest. *Id.* at 893. The proposed amended complaint and accompanying exhibits reveal that Borne indorsed two notes for the borrower, Willow Industries, an entity in which he owned stock. The first is dated September 19, 1974, due October 25, 1974, for $270,000, and the second is dated September 25, 1974, due October 25, 1974, for $960,000. Prior to execution of these notes, on October 2, 1972, Myron Friedman, Borne, and Chizner had signed a continuing guarantee of Willow's obligations in favor of the Bank. Willow's obligations were also covered by a guarantee from Twin Ridge Properties, Inc., executed by its president, Borne, on August 6, 1973. Twin Ridge was a subsidiary of Willow. Thereafter, in turn, Borne had guaranteed Twin Ridge's obligations to the Bank by a form instrument dated February 20, 1974.

If separate suits had been brought upon each of the above mentioned notes at the time of the making of this motion in 1985, they would have been time barred. As a result, plaintiff relies upon the rule of relation back of amendments contained in N.Y. C.P.L.R. § 203(e); however,

> "[E]ven in diversity cases, the question whether an amendment relates back is one of federal law."

*Curry v. Johns-Manville Corp.*, 93 F.R.D. 623, 625 n. 3 (E.D.Pa.1982) (citations omitted); *accord American Banker's Ins. Co., etc. v. Colorado Flying Academy, Inc.*, 93 F.R.D. 135 (D.Colo.1982) (cases cited and discussion therein); *Florence v. Krasucki*, 533 F.Supp. 1047, 1051–53 (W.D.N.Y.1982) (cases cited and discussion therein). Consequently, this motion is governed by Fed.R. Civ.P. 15(c), which provides in relevant part,

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Additionally,

> "It is well settled that the propriety of granting a motion for leave to amend is within the sound discretion of the district court. The grounds upon which the court may properly deny the introduction of a proposed amended pleading include undue delay, bad faith, failure to cure deficiencies by amendments previously allowed, futility of amendment and undue prejudice to the opposing party."

*Marine Midland Bank v. Keplinger & Associates, Inc.*, 94 F.R.D. 101, 103 (S.D.N.Y. 1982) (citations omitted).

Plaintiff released Borne from his liabilities for $400,000, which Borne paid. The settlement covers the notes here at issue, as the stipulation dismissing Borne from the case provides,

> "1. Counts 1, 3, 5 [$270,000 note] and 6 [$960,000 note] of the *amended complaint* are hereby dismissed with prejudice only as against the defendant Robert Borne;"

(emphasis added).

Plaintiff's settlement of Borne's liability on these notes has favorable consequences

for Borne's coguarantors. While the settlement does not operate as a complete release, *Manufacturers and Traders, etc. v. Tronolone,* 71 A.D.2d 835, 419 N.Y.S.2d 370 (4th Dept.1979) (memorandum); *National Bank of North America v. Kory,* 63 A.D.2d 579, 404 N.Y.S.2d 626, 627 (1st Dept.1978) (memorandum), *mot. for lv. to app. den.,* 45 N.Y.2d 712, 411 N.Y.S.2d 1025, 383 N.E.2d 563 (1978), among and between co-obligors (here coguarantors), the creditor settles each co-obligor's proportionate ratio of the whole debt. This rule is illustrated in practice in both *Kory, supra* and *Tronolone, supra,* where the creditor sued the remaining co-obligors for a balance due on a debt instrument after having made arrangements with the other co-obligors.

> "The rule in equity is, that when a cosurety has, by the conduct of the creditor, been released from his liability, the remaining co-surety will be held exonerated only as to so much of the original debt as the discharged co-surety could have been compelled to pay, had his obligation continued."

*Morgan v. Smith,* 70 N.Y. 537, 542 (1877) (citations omitted). Although the result in *Morgan* was criticized in *United States Printing & Lithograph v. Powers,* 233 N.Y. 143, 135 N.E. 225 (1922), the Court there stated,

> "The case of *Morgan v. Smith,* 70 N.Y. 537, is relied on by respondent as opposed to the foregoing views. The decision is that case was adopted by a bare majority of the court, and we do not regard the reasoning of the opinion as an authority against our views in the light of more recent decisions. It did uphold the action of the lower courts in affirming a judgment against one joint surety and reversing it as to another on the ground of failure of consideration as to the latter. The opinion, leaving undecided the question whether one joint obligor would lose his right of contribution against another who was discharged by the creditor, *announces the rule that, even if he did lose such right, he would still be liable for his share of the indebt-*

*edness,* and that therefore the instructions asked by the appealing surety of the court that he had been wholly discharged by the release of the other surety were too broad, and the refusal to so charge did not constitute error. This was followed by a discussion of the form of release necessary to effect a discharge of joint debtors in England and this country. *The discussion as a whole does not seem to us to be opposed to what we have written."*

135 N.E. at 228 (emphasis added). Subsequently, the Court cited *Morgan* in *Newburger v. Lubell,* 266 N.Y. 4, 193 N.E. 440 (1934), stating,

> "When the plaintiffs [creditors] knowingly released Abraham [co-obligor], they also released Samuel [co-obligor] to the extent that Abraham would have been liable over to him as cosurety which in this instance is one-half."

193 N.E. at 442. The parties have neither raised nor discussed the issue of the effect of the settlement with Borne; however, whatever the extent of Chizner's remaining liability on these notes, a point the Court need not determine in this context, Chizner's liability is not the full amount of the notes demanded in the proposed amended complaint.

▆ In terms of influencing the Court's ruling on this motion, the above described facial deficiency of the proposed pleading is relatively insignificant in light of other aspects of the record. Plaintiff has not met its burden of offering a satisfactory explanation for the delay in bringing suit. *See Saunders v. Thrall Car Mfg. Co.,* 582 F.Supp. 945, 952–53 (S.D.N.Y.1983), *aff'd* 730 F.2d 910 (2d Cir.1984) (per curiam). A District Court has discretion to deny leave to amend in the face of extraordinarily long and essentially unexplained delay. *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 138 (1st Cir.1985).

According to plaintiff's liquidation assistant, Simon Levy, who was assigned to these accounts (Borne, Willow, Twin Ridge, Chizner, and Jeron Realty) in mid–1984, he

discovered the notes in a file a few days prior to giving deposition testimony on February 27, 1985. Levy adds that he is unable to determine from the file the reason for plaintiff's failure to have acted earlier, even though plaintiff had filed claims in the bankruptcy proceedings of Twin Ridge and Willow. In the Twin Ridge bankruptcy petition, dated January 24, 1975, Borne, as guarantor of Willow's obligations, had also listed contingent liabilities of $1,230,000 to the Franklin National Bank. Plaintiff does not claim that this document, which should have alerted it to the situation, was buried in a file. *See Oliner v. McBride's Industries, Inc.,* 106 F.R.D. 9, 14 n. 6 (S.D.N.Y. 1985). In terms of delay—almost 5 years since the inception of this suit—the record discloses no reason why plaintiff should not suffer the same consequences visited upon any other creditor that sleeps on his rights. *See Carter v. Supermarkets General Corp.,* 684 F.2d 187, 192 (1st Cir.1982); *Madry v. Sorel,* 558 F.2d 303, 306 (5th Cir.1977), *rehearing en banc denied,* 561 F.2d 831 (5th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 56 L.Ed.2d 76 (1978).

Yet another factor underscoring the weakness of plaintiff's position, is that except for formal entry of judgment upon Counts II and III of the original complaint—the only counts involving Chizner—the case against his estate would have been concluded when the Court granted plaintiff's motion for summary judgment on December 21, 1984. *Cf. Kelsey v. State of Minnesota,* 565 F.2d 503, 507 (8th Cir. 1977).

■ In an analogous context, the entry of judgment after the granting of a defendant's motion for summary judgment requires the plaintiff to move for vacation of the judgment before seeking leave to amend. *See Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985) (per curiam); *Twohy v. First Nat. Bank of Chicago,* 758 F.2d 1185, 1196 (7th Cir.1985). *In Mitsubishi Aircraft Intern. Inc. v. Brady,* 780 F.2d 1199 (5th Cir.1986), the Court stated,

"Also by the time the motion to amend was filed, there was no longer existent a claim to be amended, since summary judgment was already granted."

*Id.* at 1203. Although a search has produced no authority on point, this observation is equally valid whether the Court grants the defendant's motion for summary judgment, dismissing the complaint, as occurred in *Brady,* or grants plaintiff's motion for summary judgment as to a defendant, granting all the relief requested, as occurred here.

Moreover, the ministerial act of the Clerk's entry of a final judgment disposing of this case could not be accomplished because issues of fact concerning Borne's liability remained to be decided. *Borne, supra,* 599 F.Supp. at 897. The Court attempted to move the case toward a resolution of those issues by setting trial dates. The parties' representations convinced the Court that its discretion in managing its calendar should be exercised to permit the opportunity for settlement, and as to Borne, settlement was reached. Thereafter, plaintiff's attempt to settle with Chizner was unsuccessful; however, in all that time, plaintiff never moved the Court to enter a judgment against Chizner. Such a judgment would have triggered time limitations concerning an appeal, but it would not have prevented the parties from reaching a post judgment settlement.

From a tactical view, in retrospect, that judgment would also have insulated Chizner from the additional liability alleged herein; however, Chizner's attorney was hardly obligated to move for entry of judgment against his client. Also in retrospect, two sets of lengthy settlement negotiations ironically have resulted in a motion containing the potential for as much litigation as the Court confronted when plaintiff first filed the case. Simply put, adjournments for purposes of settlement negotiations are not intended to promote the combing of files in search of time barred additional claims, and least of all, after the defendant's liability under the complaint has been determined in full.

In response to those observations, stemming in part from the Court's view of the record and the Chizner estate's reaction of outrage, plaintiff contends that under the rule of relation back, Fed.R.Civ.P. 15(c), supra, actions upon the notes are not time barred. Plaintiff argues that the instant notes were all part of the financing of one real estate venture, previously dealt with in the decision of December 21, 1984. *F.D. I.C. v. Borne, supra*. In plaintiff's view, the transactions associated with the venture were discussed in the pleadings, discovery and other papers previously submitted in the case; hence, Chizner received sufficient notice of the matters to be raised by amendment.

Plaintiff relies upon *Senger v. Soo Line R. Co.*, 493 F.Supp. 143, 145 (D.Minn.1980), for the proposition that the requisite notice may be found in documents in the record other than the pleading sought to be amended; however, this view is not entirely compatible with *Rosenberg v. Martin*, 478 F.2d 520 (2d Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973), where Judge Friendly wrote,

> "As said by Judge Laramore in Snoqualmie Tribe v. United States, 372 F.2d 951, 960, 178 Ct.Cl. 570 (1967), 'the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading.'"

*Id.* at 526. In later decisions in this Circuit, *Rosenberg* continues to be followed. *E.g., Oliner, supra*, 106 F.R.D. at 12; *Unicure, Inc. v. Thurman*, 97 F.R.D. 1, 4 (W.D.N.Y. 1982); *Marine Midland Bank, supra*, 94 F.R.D. at 104.

The original complaint in this matter informed defendants of little more than the existence of three notes and their asserted liabilities thereon. There is no mention of any real estate project or any other facts which suggest the relationship between those three notes or the possibility of other assertedly related notes. Plaintiff relies heavily upon the contents of the answer and discovery documents; however, the admission that the three notes originally at issue are part of one real estate transaction or venture is not equivalent to an admission that every Willow Industries note guaranteed by Chizner is somehow related to that real estate project, or conversely, an acknowledgement that a suit upon any one note related to a real estate venture, or covered by a single guarantee, is somehow the equivalent of a suit upon every note related to that real estate venture, or covered by that guarantee.

The Court's search for relevant precedent has disclosed no case exactly on point, *i.e.*, a motion to amend the complaint in a case concerning several contracts of debt arising from the financing of a single project; however, cases treating comparable fact patterns have resulted in the finding of no relation back. *Wiren v. Paramount Pictures*, 206 F.2d 465, 468 (D.C. Cir.1953), *cert. denied*, 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954) (Where the fraud alleged in the proposed pleading was motivated by and grew out of the fraud alleged in the original pleading, the proposed amendment did not relate back); *Marine Midland Bank, supra*, 94 F.R.D. at 104 (New allegations of misrepresentations through July 1978, which misrepresentations caused plaintiff to finance a coal mine to its loss, do not relate back to a complaint challenging the accuracy of defendant's prior representations about the mine up until August 1977); *Textile Museum v. F. Eberstadt & Co., Inc.*, 453 F.Supp. 72, 75 (S.D.N.Y.1978) (Allegations related to defendant-investment advisor's recommendation to plaintiff to purchase shares of Franklin National Bank stock in 1969 do not relate back to a complaint charging defendant with failure to recommend sale of the shares, in light of the bank's financial condition, in January 1974); *Holdridge v. Heyer-Schulte Corp., etc.*, 440 F.Supp. 1088, 1094 (N.D.N.Y.1977) (Where the original complaint alleged a defective prosthesis implanted in plaintiff's right breast in July 1971, proposed allegations concerning other prosthetic devices implanted in plaintiff's body do not relate back); *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.*, 395 F.Supp. 234, 250 (N.D.Ill.1974), *aff'd*

547 F.2d 1300 (7th Cir.1976), *cert. denied,* 431 U.S. 929, 97 S.Ct. 2631, 53 L.Ed.2d 243 (1977) (Alleged infringement of one patent related to a drinking cup is not part of the same conduct, transaction or occurrence as the alleged infringement of another patent related to the cup); *Jackson v. Ideal Publishing Corp.,* 274 F.Supp. 318, 320 (E.D. Pa.1967) (Where a complaint for libel alleged publication in the February issue of a magazine, an amendment alleging publication in the March and April issues does not relate back); *United States, etc., v. Home Indemnity Insurance Co.,* 246 F.Supp. 27, 30 (E.D.Pa.1965) (Although materialman on government contract contended that he had delivered materials to same place within single government compound and thereafter learned that more than one contract was being performed by contractor and that each contract was covered by separate bond written by defendant surety, materialman was not entitled to add to complaint claims relating to other contracts and consequently other bonds where causes could not be brought directly on those bonds against surety due to expiration of limitations period); *United States v. Templeton,* 199 F.Supp. 179, 183 (E.D.Tenn.1961) ("When the defendant was placed on notice in 1952 that he was charged with wrongful action [giving rise to forfeiture of 22 bales of cotton under the False Claims Act], he could not be charged thereby with being placed on notice that he might be called upon eight years later to defend himself from claims of wrongful action [under the Commodity Credit Corporation Act concerning improper loans upon 524 bales of cotton, which consisted of the aforementioned 22 bales and 502 other bales.]"). The results in these cases are consistent with *Siegel v. Converters Transportation, Inc.,* 714 F.2d 213 (2d Cir.1983) (per curiam), relied upon by plaintiff, where the Court stated,

> "In this case the initial complaint made it clear that Converters sought recovery for all unpaid shipping services it had rendered Elks and all the 'commissions' paid to the various defendants. The 'conduct' or 'transaction' in question was therefore the agreement to violate the tariff filed with the ICC by means of 'free' shipments and 'commissions.' To allow Elk to interpose a statute of limitations defense on the theory that each shipment represented a separate 'occurrence' for the purpose of Rule 15(c) would ignore the fact that the *plaintiff was not required under the Rules to plead each shipment with specificity, and did not do so.... The gist of both the original suit and the amended complaint was the unlawful agreement to pay lower freight charges and commissions, and its continuing performance, not a series of agreements as to unrelated shipments.*"

*Id.* at 216 (emphasis added and citations omitted).

Here, in sharp contrast, plaintiff was required to plead each note separately and with specificity. In this case, the real estate venture, which assertedly ties all of the notes together, is not the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. That enterprise was not subsumed by one contract, in which a suit for failure to perform one part of the contract would have notified the defendant of the potential for suit upon liability for failure to have performed some other part of the contract. *Compare United States, etc. v. Guy H. James Construction Co.,* 390 F.Supp. 1193, 1200–02 (M.D.Tenn.1972), *aff'd* 489 F.2d 756 (6th Cir.1974) (discussion therein).

■ Accordingly, for the above reasons, plaintiff's motion to amend the complaint is denied.

Additionally, given the age of this case, plaintiff is directed to tender a proposed judgment against the estate of Chizner in this matter within ten (10) days of the date of this order, or alternatively to show cause in writing why this case should not be dismissed for want of prosecution. Defendant's counsel will have ten (10) days

**120**

thereafter to respond to the proposed form of judgment.

SO ORDERED.